UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

In Re: KEMMAL FRANCE,

           Debtor(s).

-------------------------------------------------------------------------X

25-23170-DSJ
CHAPTER 13

**NOTICE OF MOTION**

     **PLEASE TAKE NOTICE** that upon the annexed Declaration of Christopher J. Kantor

dated February 24, 2026, together with the exhibits annexed thereto, and upon all pleadings and

proceedings heretofore had herein, the movant, IESHA FRAZIER (the "Movant"), by her

attorneys, McGowan Harrington Parisi PLLC, will move this Court before the Honorable David

S. Jones at the United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, New York 10004, on a date and time to be determined by the Court,

for an Order: (1) pursuant to 11 U.S.C. §362(d) modifying the automatic stay and permitting the

Movant to proceed in the Supreme Court of the State of New York, County of Rockland under

Index No. 037483/2025 (the "State Court Action") to prosecute claims seeking specific

performance, breach of contract and related relief against the Debtor, KEMMAL FRANCE (the

"Debtor"); and (2) for such other and further relief as this Court deems just and proper.


     **PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 9014 of the Federal Rules

of Bankruptcy Procedure and Rule 9006-1 of the Local Bankruptcy Rules for the Southern

District of New York, any answering papers shall be filed and served on or before March 10,

2026, and any reply papers shall be filed and served no later than March 17, 2026, or such other

date as the Court may direct.

Dated: Tarrytown, New York
February 24, 2026

MCGOWAN HARRINGTON PARISI PLLC

By: _____
Christopher J. Kantor
*Attorneys for IESHA FRAZIER*
120 White Plains Road, Suite 420
Tarrytown, New York 10591
(845) 323-4940

TO:   All parties via ECF

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

In Re: KEMMAL FRANCE,                                                      25-23170-DSJ

                         Debtor(s).                                                      CHAPTER 13

-------------------------------------------------------------------------X

### DECLARATION OF CHRISTOPHER J. KANTOR IN SUPPORT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.      I am associated with the law firm of McGowan Harrington Parisi PLLC, counsel of record for IESHA FRAZIER (the "Movant") in connection with the above-captioned proceeding.  I am fully familiar with the facts set forth herein by virtue of the file maintained by my office and my personal involvement in this matter, and I make this Declaration in Support of the Movant's motion for an Order: (1) pursuant to 11 U.S.C. § 362(d) modifying the automatic stay and permitting the Movant to proceed in the Supreme Court of the State of New York, County of Rockland under Index No. 037483/2025 (the "State Court Action") to prosecute claims seeking specific performance, breach of contract and related relief against the Debtor, KEMMAL FRANCE (the "Debtor"); and (2) for such other and further relief as this Court deems just and proper.

2.      For the reasons set forth herein, the Movant respectfully requests this motion be granted in all respects.

Factual Background

3.      The Movant and the Debtor are tenants in common and co-owners of certain real property located at 33 De Halve Maen Drive, Stony Point, New York 10980 (the "Property"). The

Property is a single-family residential dwelling, identified on the Rockland County Tax Map as Section 20.09, Block 2, Lot 36.

4. On May 21, 2025, the Movant and the Debtor, as sellers, jointly entered into a written agreement with Chaya M. Goldstein and Daniel Goldstein (collectively the "Purchasers") for the sale of the Property to the Purchasers (the "Contract"). A true and accurate copy of the Contract is annexed hereto as **Exhibit "A."**

5. Pursuant to the Contract, the total purchase price for the Property was Six Hundred Fifty-Six Thousand Dollars ($656,000.00).

6. The Contract provided for a closing date on or about June 20, 2025 (the "Closing").

7. Following the execution of the Contract, the Movant timely performed all obligations required of her and remained ready, willing and able to proceed with the Closing.

8. The Debtor did not cooperate in the performance of the Contract and has, to date, failed to execute necessary transfer documents or otherwise enable the Closing of the Property.

9. On or about August 28, 2025, the Movant, through the undersigned counsel, transmitted a written demand letter (the "Demand Letter") to the Debtor by certified mail and email at the Debtor's address and known email account, demanding his immediate cooperation in completing the closing of the sale of the Property pursuant to the Contract. A true and accurate copy of the Demand Letter is annexed hereto as **Exhibit "B."**

10. The Debtor did not respond to this letter and, to date, has not taken any steps to proceed with or finalize the sale of the Property.

11. As a result of the Debtor's noncompliance with his obligations pursuant to the Contract, the Movant commenced an action against the Debtor in the Supreme Court of the State of New York, Rockland County, under Index No. 037483/2025 for specific performance, breach

2

of contract and related relief. True and accurate copies of the Summons and Verified Complaint dated October 24, 2025 are annexed hereto as **Exhibit "C."**

12.     The Debtor was personally served with the Summons and Verified Complaint on October 31, 2025. A true and accurate copy of the Affidavit of Service is annexed hereto as **Exhibit "D."**

13.     Pursuant to New York Civil Practice Law and Rules ("CPLR") § 3012(a), the Debtor was required to appear, answer or otherwise respond to the Summons and Verified Complaint in the State Court Action on or before November 20, 2025. However, the Debtor failed to appear, answer or otherwise respond to the Verified Complaint.

14.     Following the Debtor's failure to timely appear in the State Court Action, the Movant filed a motion for Default Judgment against the Debtor seeking specific performance on the Contract. True and accurate copies of the motion filings, including the affidavit of service of same, are collectively annexed hereto as **Exhibit "E."**

15.     Subsequent to his default in the State Court Action, the Debtor commenced the instant Chapter 13 bankruptcy proceeding on or about December 4, 2025.

16.     As a result of the Debtor's instant bankruptcy filing, the State Court Action was automatically stayed pursuant to 11 U.S.C. §362(a).

17.     Absent relief from this automatic stay, the Movant faces continuing and substantial prejudice, including the material risk that the Purchasers will withdraw from or terminate the Contract due to the Debtor's willful and ongoing delay.

18.     The Property is a unique, single-family residential dwelling, and monetary damages would not adequately compensate the Movant or the Purchasers for the loss of the benefit of the Contract.

3

19.     As set forth below, these circumstances establish ample "cause" to modify the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The relief requested is limited in scope and intended solely to permit adjudication of the parties' state-law rights in a forum well-suited to resolve them, while preserving this Court's jurisdiction over the Debtor's estate and the administration of any resulting proceeds.

## ARGUMENT

### Cause Exists to Modify the Stay Under 11 U.S.C. §362(d)(1)

20.     11 U.S.C. § 362(d) provides that, on request of a party in interest, the Court shall grant relief from a stay of proceedings "for cause, including the lack of adequate protection of an interest in property of such party in interest." *11 U.S.C. § 362(d)(1)*.

21.     Such cause exists here because the State Court Action concerns core state-law issues involving the Movant's and the Purchasers' interests in real property arising from the Contract. The State Court Action is already pending and is well-suited to promptly and efficiently adjudicate the parties' rights and obligations. *Mongiello v. Eastman (In re Mongiello)*, 2025 U.S. Dist. LEXIS 9715 (S.D.N.Y., Jan. 17, 2025, No. 24-CV-694-CS) (affirming the Bankruptcy Court's vacatur of the automatic stay in a State Court proceeding concerning the sale of real property co-owned by the debtor).

22.     Furthermore, the Movant is a non-debtor co-owner of the Property whose separate property and contract rights are being impaired by the Debtor's unreasonable delay and failure to honor the duly executed Contract. The prejudice to the Movant from this indefinite delay is significant and immediate, including the risk of losing ready, willing and able purchasers and the benefit of the Contract itself.

23.     This is not a case in which modification of the automatic stay would divert value away from the bankruptcy estate. To the contrary, permitting the State Court Action to proceed

4

creates a clear path toward the sale and liquidation of the Property at a contract price already agreed upon, resulting in immediate, identifiable proceeds flowing to the estate through the Debtor's share of the sale proceeds. Those proceeds may then be applied toward payment of creditors and administration of the Debtor's Chapter 13 plan, while simultaneously eliminating a contested asset that would otherwise prolong and complicate the bankruptcy proceedings and burden the bankruptcy estate.

24.    It is respectfully submitted that the continued imposition of the stay of proceedings in the State Court Action will substantially prejudice the Movant and the Purchasers. Granting this limited relief will promote judicial economy by allowing the State Court to determine the merits of the dispute while preserving this Court's jurisdiction over any issues relating to the administration of the Debtor's estate.

25.    Beyond the substantial prejudice to the Movant and the absence of any countervailing harm to the estate, Courts have consistently held that a debtor's lack of good faith in filing a bankruptcy petition constitutes "cause" to modify or lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1). *See In re MacInnis*, 235 B.R. 255, 259 (S.D.N.Y. 1998) ("[i]t is well established that a debtor's lack of good faith in filing a petition for bankruptcy constitutes sufficient 'cause' to lift the stay") (internal citations omitted). As set forth above, the Debtor was duly served with the Summons and Verified Complaint in the State Court action on October 31, 2025 and failed to appear, answer or otherwise respond. The Debtor's bankruptcy filing occurred after he had already defaulted in the State Court Action and at a time when he faced the imminent prospect of an adverse judgment compelling him to honor his contractual obligations. It is respectfully submitted that this sequence of events supports an inference that the instant bankruptcy filing was intended to forestall the State Court Action rather than to reorganize the Debtor's financial affairs in good faith.

26.    While the Movant does not contend that the bankruptcy filing was per se improper, the record demonstrates that the continued enforcement of the automatic stay under these circumstances would reward dilatory conduct and permit the Debtor to use the Bankruptcy Code as a shield against the consequences of his prepetition default. Accordingly, the timing of the Debtor's bankruptcy filing, when considered together with the prejudice to the Movant and the Purchasers and the absence of any countervailing harm to the estate, constitutes additional "cause" warranting modification of the automatic stay.

27.    For all of the foregoing reasons, the Movant respectfully requests an Order: (1) modifying the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit the State Court Action to proceed; and (2) for such other and further relief as this Court deems just and proper.

Dated: Tarrytown, New York
       February 24, 2026

McGOWAN HARRINGTON PARISI PLLC

By:   _____
      Christopher J. Kantor
      *Attorneys for IESHA FRAZIER*
      120 White Plains Road, Suite 420
      Tarrytown, New York 10591
      (845) 323-4940

TO:    All parties via ECF

6

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Rule 7.1(c) of the United States District Court for the Southern District of New York that the total number of words in the foregoing submission, inclusive of point headings and footnotes, and exclusive of pages containing the caption, table of contents, table of authorities, signature block and certificate of compliance, or any authorized addendum containing statutes, rules and regulations, etc., is 1535 and thus complies with Local Rule 7.1.

Dated: Tarrytown, New York
February 24, 2026

_____
Christopher J. Kantor

# **Exhibit A**

(Executed Contract of Sale)

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

# CONTRACT OF SALE
## (ROCKLAND COUNTY APPROVED)

### THIS CONTRACT HAS BEEN APPROVED BY THE ROCKLAND COUNTY BAR ASSOCIATION

### CONTRACT OF SALE

**WARNING:** NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW "PLAIN ENGLISH."

**NOTE:** FIRE AND CASUALTY LOSSES: This Contract form does not provide for what happens in the event of fire or casualty loss before the title CLOSING. Unless different provision is made in this Contract, Section 5-1311 of the General Obligations Law will apply. One part of that Law makes a PURCHASER responsible for fire and casualty loss upon taking of title to, or possession of, the PREMISES.

| | |
|---|---|
| Date: | CONTRACT OF SALE made as of the 21st day of May, 2025 |
| Parties: | BETWEEN **Kemmal France and Iesha Frazier**<br>33 De Halve Maen Drive, Stony Point, NY 10980<br><br>hereinafter called "SELLER," who agrees to sell, and<br><br>**Chaya M. Goldstein and Daniel Goldstein**<br><br>hereinafter called "PURCHASER," who agrees to buy: |
| Premises: | The property, including all buildings and improvements thereon (the "PREMISES") more fully described on a separate page marked "Schedule A" and the personal property, if any, set forth on "Schedule B" and also known as:<br><br>Street Address   33 De Halve Maen Drive, Stony Point, NY 10980<br><br>Tax Map Designation:  20.09-2-36 |
| Purchase Price: | 1.   The purchase price is: ................................................. $ 656,000.00<br><br>Payable as follows:<br><br>(a)   On the signing of this Contract,<br>by check subject to collection: ....................... $ 65,600.00<br><br>In the event that Purchaser finances this purchase with a mortgage loan and Purchaser's lender allows a "seller's concession" then both the Seller and the Purchaser shall cooperate in executing such addendums to the contract of sale which the lender may require. The Purchaser shall pay all costs associated with the concession including additional transfer tax.<br><br>(b)   Balance at Closing: ................................. $ 590,400.00 |

Page 1

**FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM**
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 12 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Escrow of:

2. The down-payment herein shall be held in escrow by SELLER'S attorney (the "Escrow Agent")

(a) Down payment: In an IOLA account at **Orange Bank & Trust, New City, New York** until CLOSING, or until this Contract is otherwise rendered null and void pursuant to its terms, and thereafter shall be disbursed to SELLER or PURCHASER, as the case may be. In the event of a dispute as to whom is entitled to such sum, and a Notice of a demand for the down payment is sent by either of the parties to the other, the Escrow Agent may (i) continue to retain such sum in escrow or (ii) deposit such sum in the Court of pending litigation. However, in the event no notice of objection is received from the other party within 10 days of receipt of the demand notice, the Escrow Agent may release the down payment to the demanding party.

(b) The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the Escrow Agent shall not be deemed to be the agent of either of the parties, and that the Escrow Agent shall not be liable to either of the parties for any act or omission on his part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. SELLER and PURCHASER shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of this Contract or involving gross negligence on the part of the Escrow Agent. The Escrow Agent shall have no duty to invest any of the funds deposited with him hereunder and shall not be responsible for any action or failure to act, unless said action or failure demonstrates bad faith.

(c) In the event that the down payment check given by PURCHASER pursuant to the terms and conditions of this Contract is returned for "Insufficient Funds" or not honored by any bank for any reason whatsoever, not caused by the Purchaser, unless PURCHASER delivers a bank check for said amount to SELLER'S attorney within three (3) days of said dishonor, plus the cost of bank charges incurred as a result of the check being dishonored, this Contract shall be deemed null and void.

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 2

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document

Pg 13 of 124

RECEIVED NYSCEF: 10/24/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

**Defaults by Purchaser:**

3. In the event PURCHASER willfully fails to make any payments due under this Contract, willfully fails or refuses to sign any documents required to close title, willfully refuses to pay any costs required by this Contract or willfully fails to keep any material promises made by PURCHASER pursuant to this Contract, SELLER shall provide written notice of PURCHASER'S failure (also known as a "willful default"). If PURCHASER fails to correct a willful default within fifteen (15) days after receipt of notice from SELLER, SELLER may terminate this Contract, and retain the down payment made hereunder. The amount retained by Seller shall be considered "liquidated damages" based upon an understanding between the parties hereto that SELLER will have suffered damages due to the withdrawal of the PREMISES from sale to the general public. The damages suffered by SELLER as a result thereof will be substantial, but incapable of determination with mathematical precision. It is, therefore, agreed by the

parties that the amount retained by SELLER is not a penalty, but rather a mutually beneficial estimate of the damages suffered by SELLER.

**Defaults by Seller:**

4. If SELLER willfully defaults hereunder, PURCHASER shall have such remedies as PURCHASER is entitled to at law or in equity, including, but not limited to, specific performance.

**Acceptable Funds:**

5. All money payable under this Contract, unless otherwise specified, shall be either:

(a) Cash, or personal check, but not over one thousand Dollars ($1,000.00);

(b) Official check of any bank, savings bank, trust company, or saving and loan association having a banking office in the State of New York, payable to the direct order of SELLER; or

(c) As otherwise agreed to or requested within five (5) days of CLOSING in writing by SELLER or SELLER'S attorney.

**FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM**
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 14 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| Subject to Provisions: | 6. | The PREMISES are sold and conveyed subject to the following: |
|---|---|---|

(a) Any state of facts an accurate survey or physical inspection may show, provided same does not render title uninsurable at normal rates;

(b) Covenants, restrictions, easements, reservations, consents and Contracts of record, if any, provided same are not violated by the existing dwelling structure and present use thereof;

(c) Rights of record, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes, in, over and upon the PREMISES; and

(d) Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided they are not violated by the buildings and improvements erected on the PREMISES.

The Sale is subject to the stated items above, provided they do not render title uninsurable at standard rates, do not prohibit the current and/or legal use of the Premises, and do not contain any outstanding options, purchase rights or require any affirmative risk or monetary payments and do not contain any provision whereby a future violation will result in forfeiture or reversion of title. Furthermore, the sale is subject to any easements and right-of-way of record provided they are located within 10 (ten) feet of the property boundary line.

**Title Company Approval:**

7. SELLER shall give and PURCHASER shall accept such title as NYS licensed title insurer shall be willing to approve and insure in accordance with the standard form of title insurance policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract. If available, Seller shall supply any documents (including prior title insurance policies and existing surveys, if any) and/or affidavits reasonably requested by Purchaser's title insurance company and required thereby for the issuance of title insurance policies to Purchaser and Purchaser's mortgagee, if any. Sellers represent they are: 1) Not subject to the provisions of Section 265-a Real Property Law of the State of New York (Equity Theft Prevention Act); 2) Not subject to a Short-Sale, requiring the approval of any Lien Holder.

**Closing Defined and Form of Deed:**

8. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other under this Contract, including the payment of the balance of the purchase price to SELLER, and the delivery to PURCHASER of a Bargain & Sale Deed with Covenants Against Grantor's Acts in proper statutory form for recording so as to transfer to PURCHASER full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The Deed will contain the covenant by SELLER as required by Section 13 of the Lien Law.

**Corporate Seller:** 9. If SELLER is a corporation, SELLER shall provide to PURCHASER at the time of CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the Deed; (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law; and (c) any and all further documents reasonably required to show that the corporation is authorized to sell and deliver the Deed pursuant to Law. The Deed in such case shall contain a recital sufficient to establish compliance with that Section.

**Closing Date and Place:** 10. CLOSING will take place at the office designated by PURCHASER'S lender; or

[X ] office of SELLER'S attorney, or

[ ] other.

On or about June 20, 2025

It is understood by and between the parties that the CLOSING shall take place within the confines of Rockland County and PURCHASER represents that PURCHASER will make application to a lending institution which closes the mortgage loan within the County of Rockland; failing which, PURCHASER shall pay to SELLER, at CLOSING, *the additional sum of $500.00 for a county contiguous to Rockland*, or $750.00 for any other county, to compensate SELLER for their additional legal fees. The travel fee, if applicable, shall be reflected on the closing statement as a credit to the Seller.

**Possession:** 11. In the absence of a written Contract to the contrary, possession of the PREMISES shall be delivered at CLOSING, vacant and broom clean, except as to articles of personal property passing to PURCHASER under the terms of this Contract.

**Broker:** 12. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than **EXP Realty** and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate Contract).

**Streets and Assignments of Unpaid Awards:** 13. This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver, at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages.

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/24/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| | | |
|---|---|---|
| Seller's Representations: | 14. | SELLER makes the following warranties and representations: |

(a)   The street address of the PREMISES is: _

**33 De Halve Maen Drive  Stony Point, NY  10980**

(b)   The current real estate taxes for the PREMISES are of public record, and SELLER does (not ) have the benefit of exemptions;

(c)   To SELLER'S best knowledge, there are no current or proposed assessments of any type affecting the subject PREMISES; and

(d)   SELLER is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

(e)   The SELLER further represents that:

(1)   The Premises and the present use and condition thereof do not violate any applicable deed restrictions or other covenants, restrictions or agreements applicable to the Premises;

(2)   No notice of notices of violation of law or municipal ordinances or of Federal, State, County or Municipal or other governmental agency regulations, orders or requirements relating to the Premises have been entered or received by Seller and Seller has no reason to believe that any such note or notice may or will be entered;

(3)   There is no action or proceeding (zoning or otherwise) or governmental investigation pending, or, to the knowledge of Seller, threatened or relating to Seller, the Premises or the transaction contemplated by this agreement, nor, to the knowledge of Seller, is there any basis for such action.

(4)   Seller has no knowledge of an existing underground oil tank on the Premises.

(5)   The Premises is serviced by: VEOLIA water(municipal water) and municipal sewer service/septic service.

(6)   Seller has full authority to transfer title to the Premises pursuant to this agreement. Except as specified herein, no person, firm or entity has any right to acquire the Premises or any rights or estates in and to the Premises;

(7)   The execution of this Contract and Seller's performance hereunder does not violate any judgment, order, injunction, decree or award of any court, administrative agency or governmental body applicable to Seller or the Premises; and,

(8)   The Premises abut a public road.

(9)   That the premises are not part of an HOA.

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 17 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Mortgage Contingency:

15.  (a)  PURCHASER'S obligation under this Contract is subject to, and contingent upon, PURCHASER obtaining, at PURCHASER'S own cost and expense, a mortgage commitment in the sum of $524,800.00, repayable over a period of thirty (30) years with interest at the prevailing rate per annum, as shall be then charged by such lending institution, registered mortgage broker or licensed mortgage banker, plus any applicable "points," discount charges or loan origination fees. PURCHASER warrants and represents that PURCHASER will, diligently and in good faith, apply for said mortgage no later than seven (7) days after the receipt of a fully executed copy of this Contract by PURCHASER'S attorney, and as the same may be extended by the parties or their attorneys, and will promptly furnish all reports, documents, verifications and/or fees required in connection therewith. PURCHASER agrees to promptly send to SELLER'S attorney a copy of any bank letter received by PURCHASER granting or declining the mortgage commitment. In the event PURCHASER does not obtain said mortgage commitment by _30 days after Purchaser's attorneys receipt of a fully executed contract_, after the exercise of good faith, then this Contract shall be deemed null and void at the option of either party to this Contract, communicated to the other party, or to the other party's attorney, in writing, via the United States Postal System or by electronic mail; and SELLER'S sole liability thereunder shall be the return of all monies paid pursuant to this Contract. If, however, prior to actual denial of PURCHASER'S mortgage application, PURCHASER elects to cancel this Contract pursuant to the provisions of this Paragraph; SELLER may, by notice to PURCHASER'S attorney given within three (3) days thereafter, unilaterally extend the time, for an additional period of not more than thirty (30) days, for PURCHASER to obtain the said mortgage commitment, during which period of time, PURCHASER shall continue to diligently pursue PURCHASER'S efforts to obtain such mortgage commitment.

(b)  A commitment requiring PURCHASER to sell any property, or to discharge any debt, as a condition precedent to closing of the mortgage loan, shall be deemed to be a "mortgage commitment" which shall satisfy the contingent aspect of Paragraph 15(a); however, a Commitment Letter which is subject to an appraisal of the PREMISES, or a credit report of PURCHASER, or a P.M.I. application, and/or verification of PURCHASER'S income, assets or source of funds shall not be deemed to be a "mortgage commitment" for purposes of Paragraph 15(a).

(c)  If PURCHASER is unable to obtain a commitment for such mortgage, SELLER'S attorney shall, upon request, have the right to see copies of the application filed by PURCHASER with the proposed mortgagee. If requested, PURCHASER will request, in writing, that the proposed mortgagee send a copy of the application to SELLER'S attorney.

(d)  In the event that PURCHASER receives a commitment for a new first mortgage in a sum less than the amount applied for, SELLER may reduce the Purchase Price by the amount of the difference between the mortgage applied for and the mortgage obtained and PURCHASER shall not have the right to declare this Contract null and void, if such modification is acceptable to PURCHASER'S mortgage lender.

(e) The Purchasers believe that, to the best of their knowledge, they are qualified from an income and credit standpoint, for the mortgage that they are seeking from the lending institution. Purchasers represent that they are applying for the mortgage loan solely in their own names and based solely upon their individual income, and that the mortgage application will not be processed by the lending institution on the basis of any additional income requirements for any other co-borrower, who is not a signatory to this contract of sale.

(f) It is specifically understood and agreed that all of the expenses related to the mortgage closing shall be borne solely by the Purchasers, and that the sellers shall have no responsibility for the payment of fees, escrows, or expenses to the lending institution. It is further understood and agreed, that the fact that the Seller had consented to making this contract contingent upon the ability of the Purchasers to secure a mortgage loan commitment does not imply any consent on the part of the seller to accept any obligations which may be imposed by the Purchaser's lending institution either with regard to the condition of the premises or the closing procedures of the lender, which would in any way amplify or extend the obligation of the Seller that are otherwise set forth in this contract of sale.-

**Mortgagee's Certificate or Letter as to Existing Mortgage(s)**

16. If the PREMISES are encumbered by an existing mortgage(s), SELLER agrees to deliver to PURCHASER at closing a duly executed Satisfaction of such Mortgage(s) in proper recordable form for such mortgage(s) together with the underlying note(s) and mortgage(s). SELLER shall pay the fees for recording such Satisfaction of Mortgage(s). If, however, the holder of a mortgage is a bank or other institution as defined in Section 274-a, Real Property Law, SELLER may, instead of the Satisfaction, furnish an unqualified letter signed by the holder of such existing mortgage(s) dated not more than thirty (30) days before CLOSING certifying the amount of the unpaid principal and interest and the per diem interest rate. **CLOSER PICK UP FEES SHALL BE LIMITED TO $250.00 PER PAYOFF INCLUSIVE OF OVERNIGHT FEES.**

**Compliance with State and Municipal Department Violations and Orders:**

17. (a) SELLER will comply with all notes or notices of violations of law, municipal ordinances, order or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the PREMISES at the date of CLOSING. The PREMISES shall be transferred free of them at CLOSING and this provision shall survive CLOSING. SELLER shall furnish PURCHASER with any authorizations necessary to make the searches that could disclose these matters.

(b) If the PREMISES are located within a jurisdiction which requires personal inspection of the PREMISES, SELLER will reasonably cooperate in obtaining the Certificate of Occupancy and Violation Searches.

**Violations of Record:**

18. If the cost of the removal of violations required to be removed by SELLER pursuant to the provisions of this Contract shall be in excess of Two Thousand Five Hundred Dollars ($2,500.00), SELLER is hereby granted an option to withdraw from this Contract; in which event SELLER shall refund to PURCHASER the monies paid on the execution hereof, together with cost of survey and title and all items listed in paragraph 28, whereupon this Contract shall become null and void

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025
NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D          Pg 19 of 124

without further liability from either party to the other, unless PURCHASER shall agree to take the title subject to said violations and assume the performance thereof and receive an abatement in reduction of the Purchase Price in the sum of Two Thousand Five Hundred Dollars ($2,500.00). the options herein granted shall be exercised by notice in writing by either part or electronic mail receipt confirmed, or their attorneys, o or before the time fixed for CLOSING, by certified mail, return receipt requested.

**Conditions of Closing:**

19. SELLER shall deliver, prior to CLOSING, to PURCHASER a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a

[ x ] one family dwelling; or

[ ] two family dwelling

at the date of CLOSING.

**Installment Assessment:**

20. If at the time of CLOSING the PREMISES are affected by an assessment, which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Contract all the unpaid installments shall be considered due and are to be paid by SELLER at CLOSING, unless the assessment is part of the State, County, Town taxes and/or Village taxes (if applicable), in which event same shall be adjusted in accordance with Paragraph 21 herein.

**Apportionments:**

21. (a) The following are to be apportioned as of midnight of the date before CLOSING: Taxes, water charges and sewer rents, fuel, if any, and municipal solid waste fees, if any.

(b) Tax apportionments shall be made in accordance with the following procedure (the Rockland County Bar Association Resolution):

(1) State, County and Town Taxes shall be adjusted for the tax year from January 1st through December 31st;

(2) School Taxes shall be adjusted for the tax year from September 1st through August 31st;

(3) Village Taxes shall be adjusted for the tax year from June 1st through May 31st (unless the subject Village (e.g., Montebello, ,Airmont, Sloatsburg or New Hempstead) utilizes a different tax year, in which case, such tax year shall be the basis for adjustment);

(4) The taxes shall be computed on a 365-day basis; and

(5) PURCHASER shall pay the tax for the day upon which the adjustment is made (the day of CLOSING).

(c) If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

(d) Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall survive CLOSING, but in no event shall survival exceed sixty (60) days from the actual date of CLOSING.

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document   Pg 20 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| | |
|---|---|
| Water Meter Readings: | 22. If there are water meter(s) and other utilities meters on the PREMISES, SELLER shall furnish a reading for each meter to a date not more than five (5)days before CLOSING and the unfixed utility meter charges, if any, shall be apportioned on the basis of such last reading. |
| Allowance for Unpaid Items: | 23. SELLER has the option to credit PURCHASER as an adjustment toward the Purchase Price with the amount of any unpaid taxes, assessments or utility charges, together with any interest and penalties thereon, to a date not less than three (3) business days after CLOSING, provided that official bills therefore, computed to said date, are produced at CLOSING. |
| Use of Purchase Price to Pay Seller Obligations: | 24. If there is anything else affecting the sale of which SELLER is obligated to pay and discharge at CLOSING, SELLER may use any portion of the balance of the purchase price to discharge same. As an alternative, SELLER may deposit money with the Title Insurance Company employed by PURCHASER and required by it to assure its discharge; but only if the Title Insurance Company will insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES, and if acceptable to the mortgage lender. Upon request, made within a reasonable time before CLOSING, PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters. |
| Affidavit as to Judgments, Bankruptcies, etc. | 25. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of SELLER, SELLER shall deliver a detailed affidavit satisfactory to the Title Insurance Company insuring PURCHASER at CLOSING showing that they are not against SELLER; the foregoing obligation shall survive CLOSING. |
| Deed Transfer and Recording Taxes: | 26. At CLOSING, SELLER shall deliver a check or other acceptable funds payable to the order of the Rockland County Clerk, or to the Title Insurance Company, in the amount of any applicable transfer tax payable by reason of the recording of the Deed, together with any required tax return. SELLER pays transfer taxes and will deliver a check at closing for the transfer taxes. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the Title Insurance Company representative at CLOSING. |
| Purchaser's Lien: | 27. All money paid on account of this Contract, the reasonable expenses of examination of the title to the PREMISES and any survey and survey inspection charges are hereby made liens on the PREMISES and collectable out of the PREMISES. Such liens, however, shall not continue after default in performance of this Contract by PURCHASER (the term "default" being herein defined in Paragraph 3 above). |
| Seller's Inability to Convey; Limitation of Liability: | 28. If SELLER is unable to transfer title to PURCHASER in accordance with this Contract, SELLER'S sole liability shall be to refund all money paid on account of this Contract, plus all charges incurred for: (i) examining the title; (ii) any appropriate additional searches made in accordance with this Contract; (iii) survey and survey inspection charges; (iv) prepaid non-refundable lenders fees, not to exceed 1% of the mortgage amount; (v) credit check and appraisal fees in the actual amounts incurred; and (vi) engineers inspection fees. The total of (i) – (vi) above shall not to exceed One Thousand Dollars ($1,000.00). Upon such refund and payment, this Contract shall be |

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 21 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

considered canceled, and neither SELLER nor PURCHASER shall have any further rights against the other party. Notwithstanding anything contained herein, the Seller shall be obligated to cure and satisfy all voluntary mortgages, liens and encumbrances on the Property and shall cause all title exceptions with respect to such voluntary mortgages, liens and encumbrances to be omitted from the title report at or prior to closing.

**Condition of Premises:** 29. The PREMISES are sold in an "AS IS" physical condition and SELLER makes no representations other than that the roof is free of leaks, basement is free of standing water, and the plumbing, heating and electrical systems, appliances, air-conditioning systems, if applicable, well, septic system, if applicable, and items of personal property to be conveyed to PURCHASER under this Contract, now in said dwelling, are in working order and will be in such condition at the time of transfer of possession to PURCHASER, normal wear and tear excepted; and that the premises will be delivered free of debris. This Paragraph shall not be construed as a warranty surviving transfer of possession. The limit of SELLER'S liability for non-working appliances, however, shall be the market value of such appliances in their condition as of the date hereof.

**Maintenance:** 30. It shall be the obligation of SELLER to maintain the PREMISES, both interior and exterior, in present condition, except as may be otherwise set forth herein, until the transfer of possession of the PREMISES to PURCHASER.

**Inspection:** 31. PURCHASER shall have access to the PREMISES at reasonable times upon reasonable notice and within forty eight (48) hours prior to CLOSING or taking possession, with all utilities in service, in order to ascertain the condition of the PREMISES with regard to Paragraphs "11," "29" and "30" herein.

**Notices:** 32. All notices required or permitted pursuant to this Contract shall be in writing and forwarded to the other party's attorney at the office address of such party's attorney via the United States Postal Service, certified mail, return receipt requested; and such notice shall be deemed given on the third (3rd) business day following mailing of such notice. Alternatively, a notice may be delivered by an overnight delivery service, or by facsimile or via email, but in any case, such notice shall be deemed made upon the date such notice is actually received by the attorney. However, a notice of default or cancellation shall only be made by certified mail return receipt requested or via overnight carrier.

**Closing Funds:** 33. PURCHASER does hereby personally guarantee all funds that shall be transmitted by PURCHASER, or on their behalf, to SELLER at the time of CLOSING as and for the balance of the Purchase Price and apportionments; it being understood that this personal guaranty shall survive the delivery of the Deed.

**Headings:** 34. The paragraph headings in this Contract are for convenience only and have no legal significance.

**Inspections:** 35. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other

**FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM** INDEX NO. 037483/2025

NYSCEF DOC. NO. 2

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document

Pg 22 of 124

RECEIVED NYSCEF: 10/24/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

property included in this sale. Based on Purchaser's own inspection and investigation thereof, Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or other property included in this sale. Purchaser further represents that they are not relying on any information of any type given or made by Seller or its representatives, except as represented in paragraph 29 above, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing. Furthermore, Purchaser shall not ask for any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract except as other.

Lead-Based Paint.

(a)   At the Purchaser's sole expense, the Purchaser shall have the right to conduct a risk assessment or inspection of possible lead-based paint hazards on the dwelling, which was constructed prior to 1978. This assessment or inspection shall be performed within ten days hereof. If the results of such test indicate that the presence of lead-based paint hazards, a copy of the report issued by the risk assessor inspector together with a written contract addendum listing the specific existing deficiencies and recommended remedial action together with the cost thereof shall be served upon the Seller's attorney within five days from the date of the report. Upon receipt of such Notice, the Seller shall have the option of, at the Seller's expense, of correcting the condition(s) prior to closing and providing a certification from a risk assessor or inspector confirming that the corrective action was taken. Seller shall give Purchaser written notice of such election within five days from receipt of the report and addendum. In the event that the Seller notifies the Purchaser that the Seller declines to exercise that option, then the Purchaser shall have the option to withdraw from this contract upon prompt notice to the Seller and, in such case, the Purchaser shall be entitled to a refund of the Down payment and return of all amounts in paragraph 28 and neither party shall have any further obligations under this Contract.

(b)   In the event that Seller exercises the option to cancel this contract, the Purchaser may nevertheless have the option to waive the report and to proceed with the purchase of the premises. Said option by the Purchaser must be exercised in writing within three days after receipt of notice that Seller has declined to take remedial action.

(c)   If the Purchaser shall fail to conduct a timely inspection or fail to serve timely notice, the provisions of this paragraph shall be deemed waived and the Purchaser, at its own cost and expense, shall be solely responsible to provide any certificates as may be required by any mortgagee or insurer of the mortgage.

(d)   The Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the Premises and has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Premises.

**Deed Description:**   36.   SELLER shall, at CLOSING, include in the Deed of Conveyance such description of the PREMISES as may be required by the lending institution, or the Title Insurance Company insuring the conveyance of title. In the event such description is based upon a new survey, such survey shall also be certified or guaranteed to SELLER and PURCHASER.

**Changes Must be in Writing:**   37.   This Contract may not be changed or canceled, except in writing, and signed by the parties or their respective attorneys.

| | |
|---|---|
| Contract Binding: | 38.  This Contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and permitted assigns of the respective parties. |
| Singular Also Means Plural: | 39.  Any singular word or term herein shall also be read as in the plural, and viceversa, whenever the sense of this Contract may require it. |
| Conflicts: | 40.  This Contract constitutes the entire Contract between the parties and shall not be modified or altered by any Contracts, warranties, or representations, whether expressed or implied, unless set forth in writing and executed by allof the parties hereto or their respective attorneys. |
| Attorney Authorizations: | 41. EACH OF THE PARTIES HEREBY AUTHORIZE THEIR ATTORNEYS TO AGREE IN WRITING TO ANY CHANGES IN DATE AND TIME PERIODS PROVIDED FORIN THIS CONTRACT. |
| PCDS: | 42. Pursuant to the Property Condition Disclosure Act of 2001, and in accordance with the 2023 amendment of Section 462, Subdivision 2, of the Real Property Law:  The Property Condition Disclosure Statement [ "PCDS"]: |

a. By signing this contract the Seller hereby affirms that Seller has fully completed and signed the PCDS;

b. By signing this contract the Purchaser hereby affirms that Purchaser has been provided the PCDS which has been fully completed and signed by the Seller.

**The Completion of the PCDS was done without the advice, review and assistance of the Attorneys and such completion by the Sellers and acceptance by the Purchase is outside the scope of the Attorney's representation.  Any action commenced to the statement shall not include the parties 'attorneys and the parties indemnify and hold harmless their respective attorneys harmless for any loss, cost or damage resulting from any dispute involving the statement.**

| | |
|---|---|
| Interpretation: | 43.  In any interpretation of the terms of this contract, none of its terms shallbe construed against the seller by reason of the fact that the seller or itsattorneys drafted the contract since the final contract is the result of negotiations by parties having equal bargaining power, with each of theparties having access to legal representation of their own selection. |
| Effective Date: | 44.  This Contract shall not be binding or effective until fully executed by both Parties and delivered by Seller to Purchaser or Purchaser's Attorney. |
| Signatures: | 45.  Digital, DocuSign, electronic, or scanned copies of original handwritten signaturesshall be considered valid. |
| Counterparts: | 46. This Agreement may be executed in counterparts, each of which shall bedeemed to be an original, but all of which, taken together, shall constitute one and the same agreement. |
| Escrowee: | 47.  Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract bydepositing the Contract Deposit in its designated bank account. |

**Assignment:**    48. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment made without such consent shall be void.

**Compliance:**    49. If applicable, the Seller shall comply with the Rockland County Well Water Statute, and the Seller shall comply with Executive Law 375(5) pertaining to smoke detectors and carbon monoxide detectors.

**CD:**    50. The seller(s) and purchaser(s) hereby authorize the delivery of a copy of the Seller's Closing Disclosure (CD), prepared by the lender, to the realestate agents/brokers named herein.

51. **Shed.** In the event there is an existing shed on the premises, it is specifically understood and agreed that if the shed is found to be in violation of any municipal ordinance from the municipality were the property is located, the Seller shall have the right to remove the violation by removing the shed from the premises and disposing of it without any abatement or reduction in the purchase price, unless the Purchaser and/or lender agree to close title subject to the shed violation with no abatement or reduction in the price.

52. **Certificate of Occupancy.** Seller's liability to obtain a certificate of occupancy for the building and all improvements shall be limited to $ 2,500.00. In the event the cost shall be in excess of $ 2,500.00 Seller shall have the option to withdraw from the contract, refund the Purchaser's down payment with no further liability. In the alternative Purchaser shall have the option to take the property "AS IS" with no reduction in purchase price.

53. **Risk of Loss.** Risk of loss or damage to the Property until transfer of title shall be assumed by the Seller. If any substantial damage to the Property occurs prior to transfer, either Purchaser or Seller shall have the option of canceling this Contract without any further liability to the other and the down payment shall be returned to the Purchaser.

54. **Sale Subject To:** Supplementing Paragraph 6 hereof, the premises to be conveyed hereunder shall also be transferred subject to:

a. Rights, if any, relating to the construction and maintenance of any public utility wire poles, pipes, conduits, and appurtenances thereto, on, under, or across the premises;

b. Minor variations and encroachments between record lines and hedges, party walls and fences and the like, not to exceed one (1) foot; shall not be considered exceptions to title, provided the title company will insure against forced removal thereof.

c. Minor variations between record lines and tax maps, not to exceed one (1) foot.

55. **Solar Panels.** In the event the home is subject to a lease and/or purchase or solar panels the parties acknowledge that they shall cooperate and execute any and all documents required for the assignment of the solar panel lease and/or the transfer of the solar panels if owned by the seller herein. All costs shall be incurred by purchaser for same. It shall be the obligation of the parties herein to ascertain the costs and responsibilities for said transfer or assignment prior to executing this contract.

56. Seller shall repair the heat in the 2 upstairs bedrooms and in the bathroom

57. Seller shall remove/take the pool table and shall complete the renovations in the downstairs bathroom

58. Seller shall pay all solar panel payments current on or before closing

Page 14    [I.F]

**Wire Fraud Notice:**

**PROTECT YOURSELF FROM BECOMING A VICTIM OF WIRE FRAUD.** Wire fraud has become very common. It typically involves a criminal hacker sending fraudulent wire transfer instructions in an email to an unsuspecting buyer or seller in a real estate transaction that appears as though it is from a trusted source, such as the victim's broker, attorney or title agent. The email may look exactly like other emails that the victim received in the past from such individuals, including having the same or a similar email address, accurate loan and other financial information, and the logo of one of those individuals. If the hacker is successful, the victim will follow the bogus instructions to wire money, such as deposit money, to the hacker's account. Once this money has been wired, it may not be possible to recover it.

We strongly recommend that, <u>before</u> you wire funds to any party, including your own attorney, real estate broker or title agent, you <u>personally call</u> them to confirm the account number and other wire instructions. You only should call them at a number that you have obtained on your own e.g., from the sales contract, their website, etc.) and should not use any phone number that is in any email – <u>even if the email appears to be from someone you know.</u>

If you have any reason to believe that your money was sent to a hacker, you must immediately contact your bank and your local office of the Federal Bureau of Investigation, who can work with other agencies to try to recover your money, to advise them where and when the money was sent. You also should promptly file a complaint with the Internet Crime Center.

Finally, since much of the information included in such fraudulent emails is obtained from email accounts that are not secure, we strongly recommend that you not provide any sensitive personal or financial information in an email or an attachment to an email. Whenever possible, such information including Social Security numbers, bank account and credit card numbers and wiring instructions, should be sent by more secure means, such as by hand delivery, over the phone, or through secure mail or overnight services.

By signing below, you indicate that you have read and understand the contents of this Contract and Wire Fraud Notice:

| | | | |
|---|---|---|---|
| Seller   Kemmal France | 5/21/2025 Date | Purchaser | 5/20/25 Date |
| Seller   Iesha Frazier | 5/21/2025 Date | Purchaser   Chaya Goldstein | 05/20/25 Date |

Page 15

## SCHEDULE "B" PERSONAL PROPERTY RIDER

Personal Property: (a) The sale also includes all fixtures and articles of personal property attached to or used in connection with the PREMISES, unless specifically excluded below. SELLER states that they are paid for and owned by SELLER free and clear of any lien other than the EXISTING MORTGAGE(S). They include but are not limited to:

Air Conditioning Equipment and Installations, Awnings, Bathroom and Kitchen Cabinets, Clothes Dryer, Dishwasher, Door Mirrors, Fencing, Flagpole, Freezer, Garbage Disposal Unit, Heating/Lighting/Cooking fixtures, Mail Box, Mantels, Outdoor Statuary, Oven, Plumbing, Pumps, Range, Refrigerator, Screens, Shades, Shrubbery, Storm Doors, Storm Windows, Switch Plates and Door Hardware, Television Aerials, Tool Shed, Venetian Blinds, Wall to Wall Carpeting, Washing Machine, Weather Vane, Window Boxes, Window Treatments, and built-ins, not excluded below, *and only to the extent that the same exist on the subject premises,and in their present condition, reasonable wear and tear excepted.*
As per MLS 840325

Excluded from this sale are furniture and household furnishings.

Prior to the Closing, Seller, at its own expense, shall remove the personal property located at the Premises and not included in the sale contemplated hereby and shall repair all damage to the Premises resulting from the removal of such personal property. Any of Seller's personal property not included in the sale contemplated hereby which is not removed from the Premises shall be deemed abandoned property. Purchaser may cause any such abandoned property to be removed from the Premises. The provisions of this paragraph shall survive the Closing.

(c) Lighting fixtures permitted to be removed by SELLER, shall be replaced by SELLER at SELLER'S expense, with standard "builders" fixtures.

(d) The personal property to be conveyed pursuant to this Contract shall only be to the extent that said personal property presently exists upon the PREMISES, and shall be deemed transferred to and conveyed to PURCHASER under the Deed of Conveyance to be delivered; but it is understood and agreed that no part of the purchase price shall be deemed to have been paid PURCHASER for same and that the property transferred hereunder shall be deemed to have been transferred without consideration.

(e) If, however, it is determined that, notwithstanding the foregoing Paragraph, there is a sales tax due for the transfer of any of the items noted in this Contract, PURCHASER shall hold harmless and indemnify SELLER for any sales tax liability. This Paragraph shall survive CLOSING.

ATTORNEY FOR SELLER:
Joy D. Diviny, Esq.
13 N. Main Street
Pearl River, NY 10965
Tel.: (845) 839-9822
Email: joy@jdivlaw.com
maria@jdivlaw.com

ATTORNEY FOR PURCHASER:
Jeffrey Yanowitz, Esq.
155 North Main Street
New City, NY 10956
Tel: (845) 639-9100
Email: jyanowitz@loewenberglaw.com

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025
NYSCEF DOC. NO. 2                                                                    RECEIVED NYSCEF: 10/24/2025
Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 27 of 124

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure

(a)   Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i) _____   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  (ii) _____   Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)   Records and reports available to the seller (check (i) or (ii) below):

  (i) _____   Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  (ii) _____   Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c) _____   Purchaser has received copies of all information listed above.

(d) _____   Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e)   Purchaser has (check (i) or (ii) below):

  (i) _____   received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

  (ii) _____   waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f) _____   Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| _Ken_ | 5/21/2025 | _Ieh_ | 5/21/2025 |
| Seller :Kemna France    Date | | Seller :Iesha Frazier    Date | |
| Daniel Goldstein   5/20/25 | | Chaya Goldstein   05/20/25 | |
| Purchaser    Date | | Purchaser    Date | |
| _____ | | _____ | |
| Agent    Date | | Agent    Date | |

# **Exhibit B**

(August 29, 2025 Demand Letter)

# McGOWAN LAW, PLLC

222 NORTH MAIN STREET
NEW CITY, NEW YORK 10956
TEL: 845.323.4940
FAX: 845.286.3618
MCGOWAN.LAW

JOHN W. MCGOWAN, ESQ.
DIRECT DIAL: (845) 286-3280
JOHN@MCGOWAN.LAW

August 29, 2025

**VIA CERTIFIED MAIL**
**AND EMAIL:** Kemmalfrance@gmail.com
Kemmal France
33 De Halve Maen Drive
Stony Point, New York 10980

> **Re:**   **DEMAND FOR SPECIFIC PERFORMANCE AND INTENT TO SEEK**
> **JUDICIAL RELIEF**
> <u>**33 De Halve Maen Drive, Stony Point, NY 10980**</u>

Dear Mr. France:

I represent Iesha Frazier ("Ms. Frazier") with whom you jointly own the real property located at 33 De Halve Maen Drive, Stony Point, New York (the "Premises").

As you are well aware, on May 21, 2025, you and Ms. Frazier entered into a binding contract (the "Contract") for the sale of the Premises to Chaya M. Goldstein and Daniel Goldstein. My client has complied with her obligations owed under the terms of the Contract and has, at all times, made good faith efforts to effectuate the sale of the Premises.

However, as I understand, you have recently made statements and otherwise engaged in conduct reflecting your refusal or attempted refusal to proceed in accordance with the Contract and sale of the Premises, including your unilateral attempts to renegotiate the existing mortgage terms which, if true, constitutes an improper effort to frustrate this transaction.

Be advised that my client does not consent to any modification of the mortgage or related financing obligations if done in an effort to delay or otherwise compromise the sale of the Premises. You are hereby directed to cease and desist from any further efforts to alter, renegotiate, or interfere with the existing mortgage or otherwise obstruct the Contract or efforts to close this sale.

Should you continue in your efforts or otherwise refuse to cooperate or act in good faith under the terms of the Contact or, in any way, attempt to undermine the sale, then my client is entitled to commence a legal action seeking the following relief:

1. Specific Performance of the Contract, thereby compelling you to perform all obligations owned thereunder and proceed with the sale; and/or

Mr. Kemmal France
August 29, 2025
Page 2

2. Partition pursuant to Article 9 of the Real Property Actions and Proceedings Law, to compel a court-ordered sale of the Premises and distribution of proceeds, together with recovery of attorneys' fees and costs.

Further, aside from explicitly reserving the right to commence the aforementioned legal actions, please allow this letter to serve as formal notice that if the sale fails to close due to your actions or inactions, my client will hold you fully responsible for all resulting losses and expenses, including but not limited to:

- Any reduction in ultimate sale price on a future resale;
- Any additional mortgage interest, fees, or penalties incurred;
- Any transactional costs, carrying costs, taxes, or attorneys' fees caused by your breach.

This letter therefore constitutes a formal demand that you:

- Immediately cease all efforts to renegotiate the mortgage or alter the agreed-upon financing arrangements;
- Confirm in writing your intention to perform under the May 21, 2025 contract; and
- Cooperate fully in executing all documents and taking all actions necessary to close the sale.

If written confirmation is not received within ten (10) days of the date of this letter that you agree to cooperate fully in this transaction per your obligations under the Contract (email notification to my attention shall be deemed sufficient), I will proceed to initiate litigation on behalf of my client (in accordance with the above) without further notice to you.

This demand is made in good faith in an effort to resolve the matter without court intervention. However, please be advised that my client is fully prepared to pursue all remedies available to her under law, including recovery of monetary damages and legal fees.

I can be reached at (845) 286-3280 or john@mcgowan.law should there be any questions or concerns. This letter is sent with all rights, both legal and equitable based in statute or otherwise, expressly reserved. Please be guided accordingly.

Very truly yours,
McGOWAN LAW, PLLC

/s/ John W. McGowan
JOHN W. McGOWAN

cc:    Joy Diviny, Esq.
       Attorney for Sellers, Iesha Frazier and Kemmal France
       (via email: joy@jdivlaw.com)

Mr. Kemmal France
August 29, 2025
Page 3

Jeffrey Yanowitz, Esq.
Attorney for Purchasers, Chaya M. Goldstein and Daniel Goldstein
(*via email:* *jyanowitz@loewenberglaw.com*)

Iesha Frazier
(*via email:* ieshaf79@gmail.com)

# **Exhibit C**

(Summons and Complaint re: State Court Action)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

------------------------------------------------------------------X

IESHA FRAZIER,

                            Plaintiff,

      -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                            Defendants.

------------------------------------------------------------------X

Index No.:

Date Purchased:

**SUMMONS**

To the above named Defendant(s)

       You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

       The basis of venue is the location of property subject to the instant action which is 33 De Halve Maen Drive, Stony Point, NY 10980, pursuant to CPLR § 507.

Dated: Tarrytown, New York
        October 24, 2025

                        Yours, etc.,
                        McGOWAN HARRINGTON PARISI PLLC
                        *Attorneys for Plaintiff, Iesha Frazier*
                        222 N. Main Street, New City, NY 10956
                        120 White Plains Road, Tarrytown, NY 10591

                        By: _____
                              JOHN W. McGOWAN, ESQ.
                              Tel. No.: (845) 323-4940
                              Fax No.: (845) 286-3618
                              Email: jmcgowan@mhp.law

**Defendants' Addresses:**
Kemmal France
33 De Halve Maen Drive
Stony Point, NY 10980

Chaya M. Goldstein
20 Truman Avenue
Spring Valley, New York 10977

Daniel Goldstein
20 Truman Avenue
Spring Valley, New York 10977

1

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 34 of 124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---------------------------------------------------------------X

IESHA FRAZIER,

                              Plaintiff,

    -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                              Defendants.

---------------------------------------------------------------X

Index No.:
Date Purchased:

**<u>VERIFIED COMPLAINT</u>**

Plaintiff, IESHA FRAZIER, through her attorneys McGOWAN HARRINGTON PARISI PLLC complaining of Defendants KEMMAL FRANCE, CHAYA M. GOLDSTEIN, AND DANIEL GOLDSTEIN, alleges, upon information and belief, as follows:

<u>**THE PARTIES**</u>

1. At all relevant times, Plaintiff Iesha Frazier ("Plaintiff" or "Ms. Frazier") was and still is a natural person residing in Bronx County, New York.

2. At all relevant times, Defendant Kemmal France ("Defendant" or "Mr. France") was and still is a natural person residing in Rockland County, New York.

3. At all relevant times, Plaintiff and Defendant (collectively, the "Sellers") were tenants in common and co-owners of certain real property located at 33 De Halve Maen Drive, Stony Point, New York 10980 (the "Property" or "Premises").

4. Defendants Chaya M. Goldstein and Daniel Goldstein (collectively, the "Purchasers") are joined pursuant to Civil Practice Law and Rules ("CPLR") § 1001(a) as persons whose contractual interests in the Property may be affected by the judgment. No relief is sought against them.

1

## JURISDICTION AND VENUE

5.       The Court has jurisdiction over this action pursuant to CPLR § 301 as the parties are domiciled in and/or conduct business in the State of New York. Venue is proper in Rockland County pursuant to CPLR § 507 because the judgment demanded would affect the title to, or the possession, use or enjoyment of the Premises.

## FACTUAL ALLEGATIONS

6.       Plaintiff repeats and reiterates that, at all relevant times, Plaintiff and Defendant were tenants in common and co-owners of the Property.

7.       The Property is a single-family residential dwelling, identified on the Rockland County Tax Map as Section 20.09, Block 2, Lot 36.

8.       The Property is currently encumbered by a mortgage held by a financial institution doing business within the State of New York.

9.       Said mortgage is the subject of a foreclosure action pending in the Supreme Court of the State of New York, County of Rockland, titled *Nationstar Mortgage, LLC v. Kemmal France, et al.*, Index No. 030423/2025 (the "Foreclosure Action").

10.      On or about May 21, 2025, Plaintiff and Defendant, as sellers, jointly entered into a written Residential Contract of Sale (the "Contract") with Purchasers for the sale of the Property.

11.      Pursuant to the Contract, the total purchase price for the Property was Six Hundred Fifty Six Thousand Dollars  ($656,000.00). A true and correct copy of the Contract is annexed hereto as Exhibit ("Ex.") "A."

12.      · The Contract was executed by Plaintiff and Defendant using DocuSign, and by the Purchasers through their attorney, Jeffrey Yanowitz, Esq. (the "Purchasers' Attorney"), thereby memorializing the agreement to sell the entire Property.

2

13. Pursuant to the terms of the Contract, the closing of title (the "Closing") was scheduled to occur on or about June 20, 2025, at a location designated by the Purchasers or, alternatively, at the office of the Sellers' attorney, Joy D. Diviny, Esq. (the "Sellers' Attorney"), located in Rockland County, New York.

14. Upon information and belief, a downpayment of $65,600.00 paid by the Purchasers is being held by Sellers' Attorney acting as the escrow agent.

15. The Contract required that the Sellers deliver good and marketable title by bargain and sale deed with covenants against grantor's acts, free of all encumbrances except those stated in the Contract.

16. The Contract contemplated that the sale proceeds would be sufficient to satisfy the outstanding mortgage encumbering the Property in full at the time of Closing.

17. Following execution of the Contract, Plaintiff performed all obligations required of her and remained ready, willing, and able to proceed to Closing on the date specified in the Contract.

18. Upon information and belief, Mr. France did not cooperate in the performance of the Contract and failed to respond to communications from Plaintiff, the Sellers' Attorney, and the Purchasers' Attorney regarding the scheduled Closing.

19. On or about June 20, 2025, upon information and belief, the scheduled Closing did not occur due, in whole or in part, to Mr. France's lack of cooperation and failure to appear and/or execute the necessary transfer documents.

20. As of that same date, Plaintiff remained in contact with the Purchasers' Attorney and confirmed her continued willingness to complete the sale as set forth in the Contract.

21. On or about August 28, 2025, Plaintiff, through counsel, transmitted a written demand letter (the "Demand Letter") to Mr. France by certified mail and email at Defendant's

3

**FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM** INDEX NO. 037483/2025
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 10/24/2025

25-23170-dsj Doc 16 Filed 02/24/26 Entered 02/24/26 11:51:09 Main Document
Pg 37 of 124

address and known email account, directing his immediate cooperation in completing the closing of the sale of the Property pursuant to the Contract. A true and correct copy of the Demand Letter is annexed hereto as Ex. "B."

22. Mr. France did not respond to the Demand Letter and has not taken any steps to proceed with or finalize the sale of the Property.

23. As a result of Defendant's inaction, the sale has not closed and the Property remains subject to the pending Foreclosure Action in Rockland County.

24. Plaintiff continues to maintain responsibility for the Property and remains prepared to convey title to the Purchasers upon Defendant's cooperation, pursuant to the Contract signed by both her and Mr. France.

25. The Purchasers have expressed a continued interest in completing the purchase, and Plaintiff, either directly or through counsel, has communicated this to Defendant on multiple occasions.

26. Plaintiff has incurred additional costs and expenses associated with the Property, including attorneys' fees, during the period in which Defendant has failed to cooperate with the sale.

27. Plaintiff has made multiple attempts to resolve the matter without court intervention, including communications through counsel, but Defendant has not responded and/or otherwise rejected attempts to proceed with the sale per the Contract.

## AS AND FOR A FIRST CAUSE OF ACTION
### (*Specific Performance*)

28. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "27" above as though fully set forth herein.

29. On or about May 21, 2025, Plaintiff and Defendant jointly entered into the

4

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025
NYSCEF DOC. NO. 1     25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document     RECEIVED NYSCEF: 10/24/2025

Pg 38 of 124

Contract with the Purchasers for the sale of the Property.

30.     The Contract is valid, binding, and enforceable upon both Plaintiff and Defendant.

31.     Plaintiff has performed all obligations required of her under the Contract and has at all times remained ready, willing, and able to proceed with the sale and closing of title.

32.     Defendant has failed and refused to perform his obligations under the Contract, including appearing for closing and executing the documents necessary to convey title to the Purchasers.

33.     The Property is unique, and Plaintiff has no adequate remedy at law for Defendant's refusal to perform his obligations under the Contract.

34.     Plaintiff is entitled to a judgment directing Defendant to specifically perform the Contract of Sale, including but not limited to the execution and delivery of all documents required to complete the closing and convey title to the Purchasers.

35.     Plaintiff is further entitled to such other and further relief as this Court may deem just and proper, including costs and disbursements incurred herein.

## AS AND FOR A SECOND CAUSE OF ACTION
### (*Breach of Contract*)

36.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "35" above as though fully set forth herein.

37.     Defendant's refusal and failure to perform his obligations under the Contract of Sale dated May 21, 2025 constitute a material breach of that Contract.

38.     As a result of Defendant's breach, the scheduled closing of title did not occur, and Plaintiff has sustained damages, including but not limited to loss of anticipated sale proceeds, additional carrying costs, legal expenses, and exposure to foreclosure proceedings against the Property.

5

## AS AND FOR A THIRD CAUSE OF ACTION
### (*Declaratory Judgment*)

39.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "38" above as though fully set forth herein.

40.    An actual and justiciable controversy exists between Plaintiff and Defendant regarding the validity, enforceability, and performance of the Contract of Sale dated May 21, 2025, and the parties' respective rights and obligations with respect to the sale of the Property.

41.    Plaintiff seeks a declaratory judgment pursuant to CPLR § 3001 declaring that:

A.    The Contract dated May 21, 2025 is valid, binding, and enforceable;

B.    Plaintiff is authorized to proceed with the sale of the Property and to complete the closing in accordance with the terms of the Contract; and

C.    The proceeds of sale shall be applied to satisfy the outstanding mortgage encumbering the Property, with any remaining proceeds distributed according to the parties' ownership interests.

42.    Plaintiff further seeks such other and further declaratory relief as this Court may deem just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (*Partition and Sale*)

43.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "42" above as though fully set forth herein.

44.    Plaintiff and Defendant are tenants in common, each owning an undivided one-half (½) interest in the Property.

45.    In the event the Contract of Sale dated May 21, 2025 cannot be specifically enforced for any reason, Plaintiff seeks partition of the Property pursuant to Article 9 of the Real Property Actions and Proceedings Law ("RPAPL") § 901 *et seq.* and a judicial sale of the

6

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 40 of 124

Property.

46.     Plaintiff requests that the proceeds of such judicial sale be applied first to satisfy any existing mortgage or lien encumbering the Property, and that the remaining net proceeds be distributed between Plaintiff and Defendant according to their respective ownership interests.

47.     Plaintiff further seeks such other and further relief as this Court may deem just and proper in connection with the partition and sale of the Property.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (*Injunctive Relief*)

48.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "47" above as though fully set forth herein.

49.     Defendant's ongoing refusal to perform his obligations under the Contract of Sale dated May 21, 2025, and his interference with the closing of title, have caused and will continue to cause irreparable harm to Plaintiff, including but not limited to the imminent risk of foreclosure, loss of the pending sale opportunity, and potential loss of Plaintiff's ownership interest in the Property.

50.     Plaintiff has no adequate remedy at law, as monetary damages alone cannot remedy the loss of unique real property or the foreclosure of the parties' jointly owned home.

51.     Pursuant to CPLR §§ 6301 and 6311, Plaintiff seeks the issuance of a temporary restraining order and preliminary injunction:

A. Enjoining Defendant from interfering with, obstructing, or preventing the sale and closing of the Property pursuant to the Contract;

B. Enjoining Defendant from acting inconsistently with the terms of the Contract or with Plaintiff's efforts to complete the Sale; and

C. Staying the pending foreclosure action involving the Property pending the

7

resolution of this action.

52.     Plaintiff further requests such other and further equitable relief as this Court may deem just and proper.

**WHEREFORE**, Plaintiff respectfully requests the issuance of a judgment as follows:

a) on the First Cause of Action, directing Defendant to specifically perform the Residential Contract of Sale dated May 21, 2025 by executing all documents necessary to convey title to the Purchasers and cooperating in the completion of the sale;

b) on the Second Cause of Action, awarding Plaintiff damages from the Defendant in an amount to be determined at trial together with interest, costs, and attorneys' fees;

c) on the Third Cause of Action, declaring that the Residential Contract of Sale dated May 21, 2025 is valid, binding, and enforceable, that Plaintiff is authorized to proceed with the sale of the Property, and that the proceeds of sale shall be applied to satisfy the existing mortgage with the balance distributed according to the parties' ownership interests;

d) on the Fourth Cause of Action, in the alternative to specific performance, ordering partition and judicial sale of the Property pursuant to RPAPL § 901 *et seq.*, with proceeds distributed in accordance with the parties' respective ownership interests;

e) on the Fifth Cause of Action, issuing a temporary restraining order and preliminary injunction enjoining Defendant from interfering with or obstructing the sale and staying any foreclosure proceedings pending resolution of this action; and

8

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 42 of 124

f) granting such other and further relief as the Court may deem just and appropriate,

together with costs and disbursements.

Dated: October 24, 2025
      Tarrytown, New York

                    Yours, etc.,
                    McGOWAN HARRIGNTON PARISI PLLC
                    *Attorneys for Plaintiff*
                    120 White Plains Road
                    Tarrytown, New York 10591

                    By: _____
                        JOHN W. McGOWAN, ESQ.
                        Tel. No.: (845) 323-4940
                        Fax No.: (845) 286-3618
                        Email: jmcgowan@mhp.law

## VERIFICATION

STATE OF NEW YORK              )
                              )ss.:
COUNTY OF WESTCHESTER          )

JOHN McGOWAN, being duly sworn, deposes and says;

I am an attorney at law duly admitted to practice law in the Courts of the State of New York and I am a member of the law firm of McGowan Harrington Parisi PLLC, attorneys for Plaintiff Iesha Frazier in the within matter. I have read the annexed Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters not stated upon knowledge, is based upon material contained in my file.

The reason why I make this verification is that my client is not located within the County where I maintain my office.

_____
John W. McGowan

Sworn to before me this
24th day of October, 2025

_____
Notary Public

STEPHANIE MONDELLO
Notary Public, State of New York
No 01MO4946377
Qualified in Putnam County
Certifcate Filed in Westchester County
Commission Expires 2/6/27

10

**EXHIBIT A**

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 2    25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document    RECEIVED NYSCEF: 10/24/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D    Pg 45 of 124

# CONTRACT OF SALE
## (ROCKLAND COUNTY APPROVED)

**THIS CONTRACT HAS BEEN APPROVED BY THE ROCKLAND COUNTY BAR ASSOCIATION**

**CONTRACT OF SALE**

**WARNING:** NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW "PLAIN ENGLISH."

**NOTE:** FIRE AND CASUALTY LOSSES: This Contract form does not provide for what happens in the event of fire or casualty loss before the title CLOSING. Unless different provision is made in this Contract, Section 5-1311 of the General Obligations Law will apply. One part of that Law makes a PURCHASER responsible for fire and casualty loss upon taking of title to, or possession of, the PREMISES.

**Date:** CONTRACT OF SALE made as of the 21st day of May, 2025

**Parties:** BETWEEN **Kemmai France and Iesha Frazier**

33 De Halve Maen Drive, Stony Point, NY 10980

hereinafter called **"SELLER,"** who agrees to sell, and

**Chaya M. Goldstein and Daniel Goldstein**

hereinafter called **"PURCHASER,"** who agrees to buy:

**Premises:** The property, including all buildings and improvements thereon (the "PREMISES") more fully described on a separate page marked "Schedule A" and the personal property, if any, set forth on "Schedule B" and also known as:

Street Address    33 De Halve Maen Drive, Stony Point, NY 10980

Tax Map Designation:  20.09-2-36

**Purchase Price:**

1. The purchase price is:................................................................$ 656,000.00

   Payable as follows:

   (a)    On the signing of this Contract,

   by check subject to collection: ..........................................$ 65,600.00

   In the event that Purchaser finances this purchase with a mortgage loan and Purchaser's lender allows a "seller's concession" then both the Seller and the Purchaser shall cooperate in executing such addendums to the contract of sale which the lender may require. The Purchaser shall pay all costs associated with the concession including additional transfer tax.

   (b)    Balance at Closing: ...............................................$ 590,400.00

25-23170-dsj Doc 16 Filed 02/24/26 Entered 02/24/26 11:51:09 Main Document
Pg 46 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Escrow of: 2. The down-payment herein shall be held in escrow by SELLER'S attorney (the"Escrow Agent")

(a) Down payment: In an IOLA account at **Orange Bank & Trust, New City, New York** until CLOSING, or until this Contract is otherwise rendered null and void pursuant to its terms, and thereafter shall be disbursed to SELLER or PURCHASER, as the case may be. In the event of a dispute as to whom is entitled to such sum, and a Notice of a demand for the down payment is sent by either of the parties to the other, the Escrow Agent may
(i) continue to retain such sum in escrow or (ii) deposit such sum in the Court of pending litigation. However, in the event no notice of objection is received from the other party within 10 days of receipt of the demand notice, the Escrow Agent may release the down payment to the demanding party.

(b) The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the Escrow Agent shall not be deemed to be the agent of either of the parties, and that the Escrow Agent shall not be liable to either of the parties for any act or omission on his part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. SELLER and PURCHASER shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of this Contract or involving gross negligence on the part of the Escrow Agent. The Escrow Agent shall have no duty to invest any of the funds deposited with him hereunder and shall not be responsible for any action or failure to act, unless said action or failure demonstrates bad faith.

(c) In the event that the down payment check given by PURCHASER pursuant to the terms and conditions of this Contract is returned for "Insufficient Funds" or not honored by any bank for any reason whatsoever, not caused by the Purchaser, unless PURCHASER delivers a bank check for said amount to SELLER'S attorney within three (3) days of said dishonor, plus the cost of bank charges incurred as a result of the check being dishonored, this Contract shall be deemed null and void.

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/24/2025
25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 47 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| | |
|---|---|
| Defaults by Purchaser: | 3. In the event PURCHASER willfully fails to make any payments due under this Contract, willfully fails or refuses to sign any documents required to close title, willfully refuses to pay any costs required by this Contract or willfully fails to keep any material promises made by PURCHASER pursuant to this Contract, SELLER shall provide written notice of PURCHASER'S failure (also known as a "willful default"). If PURCHASER fails to correct a willful default within fifteen (15) days after receipt of notice from SELLER, SELLER may terminate this Contract, and retain the down payment made hereunder. The amount retained by Seller shall be considered "liquidated damages" based upon an understanding between the parties hereto that SELLER will have suffered damages due to the withdrawal of the PREMISES from sale to the general public. The damages suffered by SELLER as a result thereof will be substantial, but incapable of determination with mathematical precision. It is, therefore, agreed by the |

parties that the amount retained by SELLER is not a penalty, but rather a mutually beneficial estimate of the damages suffered by SELLER.

| | |
|---|---|
| Defaults by Seller: | 4. If SELLER willfully defaults hereunder, PURCHASER shall have such remedies as PURCHASER is entitled to at law or in equity, including, but not limited to, specific performance. |
| Acceptable Funds: | 5. All money payable under this Contract, unless otherwise specified, shall be either: |

    (a)    Cash, or personal check, but not over one thousand Dollars ($1,000.00);

    (b)    Official check of any bank, savings bank, trust company, or saving and loan association having a banking office in the State of New York, payable to the direct order of SELLER; or

    (c)    As otherwise agreed to or requested within five (5) days of CLOSING in writing by SELLER or SELLER'S attorney.

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 48 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

**Subject to Provisions:**

6.  The PREMISES are sold and conveyed subject to the following:

(a)   Any state of facts an accurate survey or physical inspection may show, provided same does not render title uninsurable at normal rates;

(b)   Covenants, restrictions, easements, reservations, consents and Contracts of record, if any, provided same are not violated by the existing dwelling structure and present use thereof;

(c)   Rights of record, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes, in, over and upon the PREMISES; and

(d)   Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided they are not violated by the buildings and improvements erected on the PREMISES.

The Sale is subject to the stated items above, provided they do not render title uninsurable at standard rates, do not prohibit the current and/or legal use of the Premises, and do not contain any outstanding options, purchase rights or require any affirmative risk or monetary payments and do not contain any provision whereby a future violation will result in forfeiture or reversion of title. Furthermore, the sale is subject to any easements and right-of-way of record provided they are located within 10 (ten) feet of the property boundary line.

**Title Company Approval:**

7. SELLER shall give and PURCHASER shall accept such title as NYS licensed title insurer shall be willing to approve and insure in accordance with the standard form of title insurance policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract. If available, Seller shall supply any documents (including prior title insurance policies and existing surveys, if any) and/or affidavits reasonably requested by Purchaser's title insurance company and required thereby for the issuance of title insurance policies to Purchaser and Purchaser's mortgagee, if any. Sellers represent they are: 1) Not subject to the provisions of Section 265-a Real Property Law of the State of New York (Equity Theft Prevention Act); 2) Not subject to a Short-Sale, requiring the approval of any Lien Holder.

**Closing Defined and Form of Deed:**

8. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other under this Contract, including the payment of the balance of the purchase price to SELLER, and the delivery to PURCHASER of a Bargain & Sale Deed with Covenants Against Grantor's Acts in proper statutory form for recording so as to transfer to PURCHASER full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The Deed will contain the covenant by SELLER as required by Section 13 of the Lien Law.

Page 4

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
NYSCEF DOC. NO. 2

INDEX NO. 037483/2025

RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document   Pg 49 of 124

Docusign Envelope ID: A066E1F4-3C64-47BD-A1CF-81E18820183D

**Corporate Seller:** 9. If SELLER is a corporation, SELLER shall provide to PURCHASER at the time of CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the Deed; (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law; and (c) any and all further documents reasonably required to show that the corporation is authorized to sell and deliver the Deed pursuant to Law. The Deed in such case shall contain a recital sufficient to establish compliance with that Section.

**Closing Date and Place:** 10. CLOSING will take place at the office designated by PURCHASER'S lender; or

[X ] office of SELLER'S attorney, or

[ ]   other.

**On or about June 20, 2025**

It is understood by and between the parties that the CLOSING shall take place within the confines of Rockland County and PURCHASER represents that PURCHASER will make application to a lending institution which closes the mortgage loan within the County of Rockland; failing which, PURCHASER shall pay to SELLER, at CLOSING, *the additional sum of $500.00 for a county contiguous to Rockland,* or $750.00 for any other county, to compensate SELLER for their additional legal fees. The travel fee, if applicable, shall be reflected on the closing statement as a credit to the Seller.

**Possession:** 11. In the absence of a written Contract to the contrary, possession of the PREMISES shall be delivered at CLOSING, vacant and broom clean, except as to articles of personal property passing to PURCHASER under the terms of this Contract.

**Broker:** 12. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than   **EXP Realty**   and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate Contract).

**Streets and Assignments of Unpaid Awards:** 13. This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver, at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages.

Seller's
Representations:

14.  SELLER makes the following warranties and representations:

(a)   The street address of the PREMISES is: _

**33 De Halve Maen Drive  Stony Point, NY  10980**

(b)   The current real estate taxes for the PREMISES are of public record, and SELLER does (not)  have the benefit of exemptions;

(c)   To SELLER'S best knowledge, there are no current or proposed assessments of any type affecting the subject PREMISES; and

(d)   SELLER is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

(e)   The SELLER further represents that:

(1)   The Premises and the present use and condition thereof do not violate any applicable deed restrictions or other covenants, restrictions or agreements applicable to the Premises;

(2)   No notice of notices of violation of law or municipal ordinances or of Federal, State, County or Municipal or other governmental agency regulations, orders or requirements relating to the Premises have been entered or received by Seller and Seller has no reason to believe that any such note or notice may or will be entered;

(3)   There is no action or proceeding (zoning or otherwise) or governmental investigation pending, or, to the knowledge of Seller, threatened or relating to Seller, the Premises or the transaction contemplated by this agreement, nor, to the knowledge of Seller, is there any basis for such action.

(4)   Seller has no knowledge of an existing underground oil tank on the Premises.

(5)   The Premises is serviced by: VEOLIA water (municipal water) and municipal sewer service/septic service.

(6)   Seller has full authority to transfer title to the Premises pursuant to this agreement. Except as specified herein, no person, firm or entity has any right to acquire the Premises or any rights or estates in and to the Premises;

(7)   The execution of this Contract and Seller's performance hereunder does not violate any judgment, order, injunction, decree or award of any court, administrative agency or governmental body applicable to Seller or the Premises; and,

(8)   The Premises abut a public road.

(9)   That the premises are not part of an HOA.

Page 6

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Mortgage
Contingency:

15. (a) PURCHASER'S obligation under this Contract is subject to, and contingent upon, PURCHASER obtaining, at PURCHASER'S own cost and expense, a mortgage commitment in the sum of $524,800.00, repayable over a period of thirty (30) years with interest at the prevailing rate per annum, as shall be then charged by such lending institution, registered mortgage broker or licensed mortgage banker, plus any applicable "points," discount charges or loan origination fees. PURCHASER warrants and represents that PURCHASER will, diligently and in good faith, apply for said mortgage no later than seven (7) days after the receipt of a fully executed copy of this Contract by PURCHASER'S attorney, and as the same may be extended by the parties or their attorneys, and will promptly furnish all reports, documents, verifications and/or fees required in connection therewith. PURCHASER agrees to promptly send to SELLER'S attorney a copy of any bank letter received by PURCHASER granting or declining the mortgage commitment. In the event PURCHASER does not obtain said mortgage commitment by _30 days after Purchaser's attorneys receipt of a fully executed contract_, after the exercise of good faith, then this Contract shall be deemed null and void at the option of either party to this Contract, communicated to the other party, or to the other party's attorney, in writing, via the United States Postal System or by electronic mail; and SELLER'S sole liability thereunder shall be the return of all monies paid pursuant to this Contract. If, however, prior to actual denial of PURCHASER'S mortgage application, PURCHASER elects to cancel this Contract pursuant to the provisions of this Paragraph; SELLER may, by notice to PURCHASER'S attorney given within three (3) days thereafter, unilaterally extend the time, for an additional period of not more than thirty (30) days, for PURCHASER to obtain the said mortgage commitment, during which period of time, PURCHASER shall continue to diligently pursue PURCHASER'S efforts to obtain such mortgage commitment.

(b) A commitment requiring PURCHASER to sell any property, or to discharge any debt, as a condition precedent to closing of the mortgage loan, shall be deemed to be a "mortgage commitment" which shall satisfy the contingent aspect of Paragraph 15(a); however, a Commitment Letter which is subject to an appraisal of the PREMISES, or a credit report of PURCHASER, or a P.M.I. application, and/or verification of PURCHASER'S income, assets or source of funds shall not be deemed to be a "mortgage commitment" for purposes of Paragraph 15(a).

(c) If PURCHASER is unable to obtain a commitment for such mortgage, SELLER'S attorney shall, upon request, have the right to see copies of the application filed by PURCHASER with the proposed mortgagee. If requested, PURCHASER will request, in writing, that the proposed mortgagee send a copy of the application to SELLER'S attorney.

(d) In the event that PURCHASER receives a commitment for a new first mortgage in a sum less than the amount applied for, SELLER may reduce the Purchase Price by the amount of the difference between the mortgage applied for and the mortgage obtained and PURCHASER shall not have the right to declare this Contract null and void, if such modification is acceptable to PURCHASER'S mortgage lender.

(e) The Purchasers believe that, to the best of their knowledge, they are qualified from an income and credit standpoint, for the mortgage that they are seeking from the lending institution. Purchasers represent that they are applying for the mortgage loan solely in their own names and based solely upon their individual income, and that the mortgage application will not be processed by the lending institution on the basis of any additional income requirements for any other co-borrower, who is not a signatory to this contract of sale.

(f) It is specifically understood and agreed that all of the expenses related to the mortgage closing shall be borne solely by the Purchasers, and that the sellers shall have no responsibility for the payment of fees, escrows, or expenses to the lending institution. It is further understood and agreed, that the fact that the Seller had consented to making this contract contingent upon the ability of the Purchasers to secure a mortgage loan commitment does not imply any consent on the part of the seller to accept any obligations which may be imposed by the Purchaser's lending institution either with regard to the condition of the premises or the closing procedures of the lender, which would in any way amplify or extend the obligation of the Seller that are otherwise set forth in this contract of sale.-

**Mortgagee's Certificate or Letter as to Existing Mortgage(s)**

16. If the PREMISES are encumbered by an existing mortgage(s), SELLER agrees to deliver to PURCHASER at closing a duly executed Satisfaction of such Mortgage(s) in proper recordable form for such mortgage(s) together with the underlying note(s) and mortgage(s). SELLER shall pay the fees for recording such Satisfaction of Mortgage(s). If, however, the holder of a mortgage is a bank or other institution as defined in Section 274-a, Real Property Law, SELLER may, instead of the Satisfaction, furnish an unqualified letter signed by the holder of such existing mortgage(s) dated not more than thirty (30) days before CLOSING certifying the amount of the unpaid principal and interest and the per diem interest rate. **CLOSER PICK UP FEES SHALL BE LIMITED TO $250.00 PER PAYOFF INCLUSIVE OF OVERNIGHT FEES.**

**Compliance with State and Municipal Department Violations and Orders:**

17. (a) SELLER will comply with all notes or notices of violations of law, municipal ordinances, order or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the PREMISES at the date of CLOSING. The PREMISES shall be transferred free of them at CLOSING and this provision shall survive CLOSING. SELLER shall furnish PURCHASER with any authorizations necessary to make the searches that could disclose these matters.

(b) If the PREMISES are located within a jurisdiction which requires personal inspection of the PREMISES, SELLER will reasonably cooperate in obtaining the Certificate of Occupancy and Violation Searches.

**Violations of Record:**

18. If the cost of the removal of violations required to be removed by SELLER pursuant to the provisions of this Contract shall be in excess of Two Thousand Five Hundred Dollars ($2,500.00), SELLER is hereby granted an option to withdraw from this Contract; in which event, SELLER shall refund to PURCHASER the monies paid on the execution hereof, together with cost of survey and title and all items listed in paragraph 28, whereupon this Contract shall become null and void

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM    INDEX NO. 037483/2025
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D   Pg 53 of 124

without further liability from either party to the other, unless PURCHASER shall agree to take the title subject to said violations and assume the performance thereof and receive an abatement in reduction of the Purchase Price in the sum of Two Thousand Five Hundred Dollars ($2,500.00). the options herein granted shall be exercised by notice in writing by either part or electronic mail receipt confirmed, or their attorneys, o or before the time fixed for CLOSING, by certified mail, return receipt requested.

**Conditions of Closing:**

19. SELLER shall deliver, prior to CLOSING, to PURCHASER a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a

[ x ] one family dwelling; or

[ ] two family dwelling

at the date of CLOSING.

**Installment Assessment:**

20. If at the time of CLOSING the PREMISES are affected by an assessment, which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Contract all the unpaid installments shall be considered due and are to be paid by SELLER at CLOSING, unless the assessment is part of the State, County, Town taxes and/or Village taxes (if applicable), in which event same shall be adjusted in accordance with Paragraph 21 herein.

**Apportionments:**

21. (a) The following are to be apportioned as of midnight of the date before CLOSING: Taxes, water charges and sewer rents, fuel, if any, and municipal solid waste fees, if any.

(b) Tax apportionments shall be made in accordance with the following procedure (the Rockland County Bar Association Resolution):

(1) State, County and Town Taxes shall be adjusted for the tax year from January 1st through December 31st;

(2) School Taxes shall be adjusted for the tax year from September 1st through August 31st;

(3) Village Taxes shall be adjusted for the tax year from June 1st through May 31st (unless the subject Village (e.g., Montebello, ,Airmont, Sloatsburg or New Hempstead) utilizes a different tax year, in which case, such tax year shall be the basis for adjustment);

(4) The taxes shall be computed on a 365-day basis; and

(5) PURCHASER shall pay the tax for the day upon which the adjustment is made (the day of CLOSING).

(c) If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

(d) Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall survive CLOSING, but in no event shall survival exceed sixty (60) days from the actual date of CLOSING.

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document   Pg 54 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Water Meter Readings:

22. If there are water meter(s) and other utilities meters on the PREMISES, SELLER shall furnish a reading for each meter to a date not more than five (5)days before CLOSING and the unfixed utility meter charges, if any, shall be apportioned on the basis of such last reading.

Allowance for Unpaid Items:

23. SELLER has the option to credit PURCHASER as an adjustment toward the Purchase Price with the amount of any unpaid taxes, assessments or utility charges, together with any interest and penalties thereon, to a date not less than three (3) business days after CLOSING, provided that official bills therefore, computed to said date, are produced at CLOSING.

Use of Purchase Price to Pay Seller Obligations:

24. If there is anything else affecting the sale of which SELLER is obligated to payand discharge at CLOSING, SELLER may use any portion of the balance of thepurchase price to discharge same. As an alternative, SELLER may deposit money with the Title Insurance Company employed by PURCHASER and required by it to assure its discharge; but only if the Title Insurance Companywill insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES, and if acceptable to the mortgage lender. Upon request, made within a reasonable time before CLOSING, PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters.

Affidavit as to Judgments, Bankruptcies, etc.

25. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of SELLER, SELLER shall deliver a detailed affidavit satisfactory to the Title Insurance Company insuring PURCHASER at CLOSING showing that they are not againstSELLER; the foregoing obligation shall survive CLOSING.

Deed Transfer and Recording Taxes:

26. At CLOSING, SELLER shall deliver a check or other  acceptable funds payable to the order of the Rockland County Clerk, or to the Title Insurance Company,in the amount of any applicable transfer tax payable by reason of the recording of the Deed, together with any required tax return. SELLER pays transfer taxes and will deliver a check at closing for the transfer taxes. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the Title Insurance Company representative at CLOSING.

Purchaser's Lien:

27. All money paid on account of this Contract, the reasonable expenses of examination of the title to the PREMISES and any survey and survey inspection charges are hereby made liens on the PREMISES and collectable out of the PREMISES. Such liens, however, shall not continue after default in performance of this Contract by PURCHASER (the term "default" being hereindefined in Paragraph 3 above).

Seller's Inability to Convey; Limitation of Liability:

28. If SELLER is unable to transfer title to PURCHASER in accordance with this Contract, SELLER'S sole liability shall be to refund all money paid on accountof this Contract, plus all charges incurred for: (i) examining the title; (ii) any appropriate  additional searches made in accordance with this Contract; (iii) survey and survey inspection charges; (iv) prepaid non-refundable lenders fees, not to exceed 1% of the mortgage amount; (v) credit check and appraisal fees in the actual amounts incurred; and (vi) engineers inspection fees. The total of (i) – (vi) above shall not to exceed One Thousand Dollars ($1,000.00). Upon such refund and payment, this Contract shall be

Page 10

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 55 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

considered canceled, and neither SELLER nor PURCHASER shall have any further rights against the other party. Notwithstanding anything contained herein, the Seller shall be obligated to cure and satisfy all voluntary mortgages, liens and encumbrances on the Property and shall cause all title exceptions with respect to such voluntary mortgages, liens and encumbrances to be omitted from the title report at or prior to closing.

| | | |
|---|---|---|
| Condition of Premises: | 29. | The PREMISES are sold in an "AS IS" physical condition and SELLER makes no representations other than that the roof is free of leaks, basement is free of standing water, and the plumbing, heating and electrical systems, appliances, air-conditioning systems, if applicable, well, septic system, if applicable, and items of personal property to be conveyed to PURCHASER under this Contract, now in said dwelling, are in working order and will be in such condition at the time of transfer of possession to PURCHASER, normal wear and tear excepted; and that the premises will be delivered free of debris. This Paragraph shall not be construed as a warranty surviving transfer of possession. The limit of SELLER'S liability for non-working appliances, however, shall be the market value of such appliances in their condition as of the date hereof. |
| Maintenance: | 30. | It shall be the obligation of SELLER to maintain the PREMISES, both interior and exterior, in present condition, except as may be otherwise set forth herein, until the transfer of possession of the PREMISES to PURCHASER. |
| Inspection: | 31. | PURCHASER shall have access to the PREMISES at reasonable times upon reasonable notice and within forty eight (48) hours prior to CLOSING or taking possession, with all utilities in service, in order to ascertain the condition of the PREMISES with regard to Paragraphs "11," "29" and "30" herein. |
| Notices: | 32. | All notices required or permitted pursuant to this Contract shall be in writing and forwarded to the other party's attorney at the office address of such party's attorney via the United States Postal Service, certified mail, return receipt requested; and such notice shall be deemed given on the third (3rd) business day following mailing of such notice. Alternatively, a notice may be delivered by an overnight delivery service, or by facsimile or via email, but in any case, such notice shall be deemed made upon the date such notice is actually received by the attorney. However, a notice of default or cancellation shall only be made by certified mail return receipt requested or via overnight carrier. |
| Closing Funds: | 33. | PURCHASER does hereby personally guarantee all funds that shall be transmitted by PURCHASER, or on their behalf, to SELLER at the time of CLOSING as and for the balance of the Purchase Price and apportionments; it being understood that this personal guaranty shall survive the delivery of the Deed. |
| Headings: | 34. | The paragraph headings in this Contract are for convenience only and have no legal significance. |
| Inspections: | 35. | Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other |

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 2    25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document    RECEIVED NYSCEF: 10/24/2025

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D    Pg 56 of 124

property included in this sale. Based on Purchaser's own inspection and investigation thereof, Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or other property included in this sale. Purchaser further represents that they are not relying on any information of any type given or made by Seller or its representatives, except as represented in paragraph 29 above, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing. Furthermore, Purchaser shall not ask for any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract except as other.

<u>Lead-Based Paint.</u>

(a) At the Purchaser's sole expense, the Purchaser shall have the right to conduct a risk assessment or inspection of possible lead-based paint hazards on the dwelling, which was constructed prior to 1978. This assessment or inspection shall be performed within ten days hereof. If the results of such test indicate that the presence of lead-based paint hazards, a copy of the report issued by the risk assessor inspector together with a written contract addendum listing the specific existing deficiencies and recommended remedial action together with the cost thereof shall be served upon the Seller's attorney within five days from the date of the report. Upon receipt of such Notice, the Seller shall have the option of, at the Seller's expense, of correcting the condition(s) prior to closing and providing a certification from a risk assessor or inspector confirming that the corrective action was taken. Seller shall give Purchaser written notice of such election within five days from receipt of the report and addendum. In the event that the Seller notifies the Purchaser that the Seller declines to exercise that option, then the Purchaser shall have the option to withdraw from this contract upon prompt notice to the Seller and, in such case, the Purchaser shall be entitled to a refund of the Down payment and return of all amounts in paragraph 28 and neither party shall have any further obligations under this Contract.

(b) In the event that Seller exercises the option to cancel this contract, the Purchaser may nevertheless have the option to waive the report and to proceed with the purchase of the premises. Said option by the Purchaser must be exercised in writing within three days after receipt of notice that Seller has declined to take remedial action.

(c) If the Purchaser shall fail to conduct a timely inspection or fail to serve timely notice, the provisions of this paragraph shall be deemed waived and the Purchaser, at its own cost and expense, shall be solely responsible to provide any certificates as may be required by any mortgagee or insurer of the mortgage.

(d) The Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the Premises and has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Premises.

Deed Description:

36. SELLER shall, at CLOSING, include in the Deed of Conveyance such description of the PREMISES as may be required by the lending institution, or the Title Insurance Company insuring the conveyance of title. In the event such description is based upon a new survey, such survey shall also be certified or guaranteed to SELLER and PURCHASER.

Changes Must be in Writing:

37. This Contract may not be changed or canceled, except in writing, and signed by the parties or their respective attorneys.

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 2    25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D Pg 57 of 124
RECEIVED NYSCEF: 10/24/2025

| Contract Binding: | 38. | This Contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and permitted assigns of the respective parties. |
| Singular Also Means Plural: | 39. | Any singular word or term herein shall also be read as in the plural, and viceversa, whenever the sense of this Contract may require it. |
| Conflicts: | 40. | This Contract constitutes the entire Contract between the parties and shall not be modified or altered by any Contracts, warranties, or representations, whether expressed or implied, unless set forth in writing and executed by allof the parties hereto or their respective attorneys. |
| Attorney Authorizations: | 41. | EACH OF THE PARTIES HEREBY AUTHORIZE THEIR ATTORNEYS TO AGREE IN WRITING TO ANY CHANGES IN DATE AND TIME PERIODS PROVIDED FORIN THIS CONTRACT. |

PCDS: 42. Pursuant to the Property Condition Disclosure Act of 2001, and in accordance with the 2023 amendment of Section 462, Subdivision 2, of the Real Property Law:  The Property Condition Disclosure Statement [ "PCDS"]:

    a. By signing this contract the Seller hereby affirms that Seller has fully completed and signed the PCDS;
    b. By signing this contract the Purchaser hereby affirms that Purchaser has been provided the PCDS which has been fully completed and signed by the Seller.

The Completion of the PCDS was done without the advice, review and assistance of the Attorneys and such completion by the Sellers and acceptance by the Purchase is outside the scope of the Attorney's representation.  Any action commenced to the statement shall not include the parties 'attorneys and the parties indemnify and hold harmless their respective attorneys harmless for any loss, cost or damage resulting from any dispute involving the statement.

| Interpretation: | 43. | In any interpretation of the terms of this contract, none of its terms shall be construed against the seller by reason of the fact that the seller or itsattorneys drafted the contract since the final contract is the result of negotiations by parties having equal bargaining power, with each of theparties having access to legal representation of their own selection. |
| Effective Date: | 44. | This Contract shall not be binding or effective until fully executed by both Parties and delivered by Seller to Purchaser or Purchaser's Attorney. |
| Signatures: | 45. | Digital, DocuSign, electronic, or scanned copies of original handwritten signaturesshall be considered valid. |
| Counterparts: | 46. | This Agreement may be executed in counterparts, each of which shall bedeemed to be an original, but all of which, taken together, shall constitute one and the same agreement. |
| Escrowee: | 47. | Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract bydepositing the Contract Deposit in its designated bank account. |

Assignment:  48. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment made without such consent shall be void.

Compliance:  49. If applicable, the Seller shall comply with the Rockland County Well Water Statute, and the Seller shall comply with Executive Law 375(5) pertaining to smoke detectors and carbon monoxide detectors.

CD:  50. The seller(s) and purchaser(s) hereby authorize the delivery of a copy of the Seller's Closing Disclosure (CD), prepared by the lender, to the realestate agents/brokers named herein.

51. Shed. In the event there is an existing shed on the premises, it is specifically understood and agreed that if the shed is found to be in violation of any municipal ordinance from the municipality were the property is located, the Seller shall have the right to remove the violation by removing the shed from the premises and disposing of it without any abatement or reduction in the purchase price, unless the Purchaser and/or lender agree to close title subject to the shed violation with no abatement or reduction in the price.

52. Certificate of Occupancy. Seller's liability to obtain a certificate of occupancy for the building and all improvements shall be limited to $ 2,500.00. In the event the cost shall be in excess of $ 2,500.00 Seller shall have the option to withdraw from the contract, refund the Purchaser's down payment with no further liability. In the alternative Purchaser shall have the option to take the property "AS IS" with no reduction in purchase price.

53. Risk of Loss. Risk of loss or damage to the Property until transfer of title shall be assumed by the Seller. If any substantial damage to the Property occurs prior to transfer, either Purchaser or Seller shall have the option of canceling this Contract without any further liability to the other and the down payment shall be returned to the Purchaser.

54. Sale Subject To: Supplementing Paragraph 6 hereof, the premises to be conveyed hereunder shall also be transferred subject to:
   a.  Rights, if any, relating to the construction and maintenance of any public utility wire poles, pipes, conduits, and appurtenances thereto, on, under, or across the premises;
   b.  Minor variations and encroachments between record lines and hedges, party walls and fences and the like, not to exceed one (1) foot; shall not be considered exceptions to title, provided the title company will insure against forced removal thereof.
   c.  Minor variations between record lines and tax maps, not to exceed one (1) foot.

55. Solar Panels. In the event the home is subject to a lease and/or purchase or solar panels the parties acknowledge that they shall cooperate and execute any and all documents required for the assignment of the solar panel lease and/or the transfer of the solar panels if owned by the seller herein. All costs shall be incurred by purchaser for same. It shall be the obligation of the parties herein to ascertain the costs and responsibilities for said transfer or assignment prior to executing this contract.

56. Seller shall repair the heat in the 2 upstairs Bedrooms and in the bathroom

57. Seller shall remove/take the Pool table and shall complete the renovations in the downstairs bathroom

58. Seller shall pay all solar panel payments current on or before closing

Page 14

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

**Wire Fraud Notice:**

**PROTECT YOURSELF FROM BECOMING A VICTIM OF WIRE FRAUD.** Wire fraud has become very common. It typically involves a criminal hacker sending fraudulent wire transfer instructions in an email to an unsuspecting buyer or seller in a real estate transaction that appears as though it is from a trusted source, such as the victim's broker, attorney or title agent. The email may look exactly like other emails that the victim received in the past from such individuals, including having the same or a similar email address, accurate loan and other financial information, and the logo of one of those individuals. If the hacker is successful, the victim will follow the bogus instructions to wire money, such as deposit money, to the hacker's account. Once this money has been wired, it may not be possible to recover it.

We strongly recommend that, **before** you wire funds to any party, including your own attorney, real estate broker or title agent, you **personally call** them to confirm the account number and other wire instructions. You only should call them at a number that you have obtained on your own e.g., from the sales contract, their website, etc.) and should not use any phone number that is in any email – **even if the email appears to be from someone you know.**

If you have any reason to believe that your money was sent to a hacker, you must immediately contact your bank and your local office of the Federal Bureau of Investigation, who can work with other agencies to try to recover your money, to advise them where and when the money was sent. You also should promptly file a complaint with the Internet Crime Center.

Finally, since much of the information included in such fraudulent emails is obtained from email accounts that are not secure, we strongly recommend that you not provide any sensitive personal or financial information in an email or an attachment to an email. Whenever possible, such information including Social Security numbers, bank account and credit card numbers and wiring instructions, should be sent by more secure means, such as by hand delivery, over the phone, or through secure mail or overnight services.

By signing below, you indicate that you have read and understand the contents of this Contract and Wire Fraud Notice:

| | | | |
|---|---|---|---|
| Seller    Kemmal France | 5/21/2025 Date | Purchaser | 5/20/25 Date |
| Seller    Iesha Frazier | 5/21/2025 Date | Purchaser   Chaya Goldstein | 05/20/25 Date |

Page 15

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM          INDEX NO. 037483/2025
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/24/2025
Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E188201830

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
                                    Pg 60 of 124

## SCHEDULE "B" PERSONAL PROPERTY RIDER

**Personal Property: (a)** The sale also includes all fixtures and articles of personal property attached to or used in connection with the PREMISES, unless specifically excluded below. SELLER states that they are paid for and owned by SELLER free and clear of any lien other than the EXISTING MORTGAGE(S). They include but are not limited to:

Air Conditioning Equipment and Installations, Awnings, Bathroom and Kitchen Cabinets, Clothes Dryer, Dishwasher, Door Mirrors, Fencing, Flagpole, Freezer, Garbage Disposal Unit, Heating/Lighting/Cooking fixtures, Mail Box, Mantels, Outdoor Statuary, Oven, Plumbing, Pumps, Range, Refrigerator, Screens, Shades, Shrubbery, Storm Doors, Storm Windows, Switch Plates and Door Hardware, Television Aerials, Tool Shed, Venetian Blinds, Wall to Wall Carpeting, Washing Machine, Weather Vane, Window Boxes, Window Treatments, and built-ins, not excluded below, *and only to the extent that the same exist on the subject premises, and in their present condition, reasonable wear and tear excepted.*
As per MLS 840325

Excluded from this sale are furniture and household furnishings.

Prior to the Closing, Seller, at its own expense, shall remove the personal property located at the Premises and not included in the sale contemplated hereby and shall repair all damage to the Premises resulting from the removal of such personal property. Any of Seller's personal property not included in the sale contemplated hereby which is not removed from the Premises shall be deemed abandoned property. Purchaser may cause any such abandoned property to be removed from the Premises. The provisions of this paragraph shall survive the Closing.

(c) Lighting fixtures permitted to be removed by SELLER, shall be replaced by SELLER at SELLER'S expense, with standard "builders" fixtures.

(d) The personal property to be conveyed pursuant to this Contract shall only be to the extent that said personal property presently exists upon the PREMISES, and shall be deemed transferred to and conveyed to PURCHASER under the Deed of Conveyance to be delivered; but it is understood and agreed that no part of the purchase price shall be deemed to have been paid PURCHASER for same and that the property transferred hereunder shall be deemed to have been transferred without consideration.

(e) If, however, it is determined that, notwithstanding the foregoing Paragraph, there is a sales tax due for the transfer of any of the items noted in this Contract, PURCHASER shall hold harmless and indemnify SELLER for any sales tax liability. This Paragraph shall survive CLOSING.

**ATTORNEY FOR SELLER:**
Joy D. Diviny, Esq.
13 N. Main Street
Pearl River, NY 10965
Tel.:    (845) 839-9822
Email:  joy@jdivlaw.com
        maria@jdivlaw.com

**ATTORNEY FOR PURCHASER:**
Jeffrey Yanowitz, Esq.
155 North Main Street
New City, NY 10956
Tel:    (845) 639-9100
Email: jyanowitz@loewenberglaw.com

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i) _____  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  (ii) _____  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

  (i) _____  Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  (ii) _____  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c) _____  Purchaser has received copies of all information listed above.

(d) _____  Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e) Purchaser has (check (i) or (ii) below):

  (i) _____  received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

  (ii) _____  waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f) _____  Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller Kemnal France | Date 5/21/2025 | Seller Iesha Frazier | Date 5/21/2025 |
| Purchaser Daniel Goldstein | Date 5/20/25 | Purchaser Chaya Goldstein | Date 05/20/25 |
| Agent | Date | Agent | Date |

**EXHIBIT B**

# McGOWAN LAW, PLLC

222 NORTH MAIN STREET
NEW CITY, NEW YORK 10956
TEL: 845.323.4940
FAX: 845.286.3618
McGOWAN.LAW

JOHN W. McGOWAN, ESQ.
DIRECT DIAL: (845) 286-3280
JOHN@MCGOWAN.LAW

August 29, 2025

**VIA CERTIFIED MAIL
AND EMAIL:** Kemmalfrance@gmail.com
Kemmal France
33 De Halve Maen Drive
Stony Point, New York 10980

> Re:   **DEMAND FOR SPECIFIC PERFORMANCE AND INTENT TO SEEK
> JUDICIAL RELIEF**
> <u>33 De Halve Maen Drive, Stony Point, NY 10980</u>

Dear Mr. France:

I represent Iesha Frazier ("Ms. Frazier") with whom you jointly own the real property located at 33 De Halve Maen Drive, Stony Point, New York (the "Premises").

As you are well aware, on May 21, 2025, you and Ms. Frazier entered into a binding contract (the "Contract") for the sale of the Premises to Chaya M. Goldstein and Daniel Goldstein. My client has complied with her obligations owed under the terms of the Contract and has, at all times, made good faith efforts to effectuate the sale of the Premises.

However, as I understand, you have recently made statements and otherwise engaged in conduct reflecting your refusal or attempted refusal to proceed in accordance with the Contract and sale of the Premises, including your unilateral attempts to renegotiate the existing mortgage terms which, if true, constitutes an improper effort to frustrate this transaction.

Be advised that my client does not consent to any modification of the mortgage or related financing obligations if done in an effort to delay or otherwise compromise the sale of the Premises. You are hereby directed to cease and desist from any further efforts to alter, renegotiate, or interfere with the existing mortgage or otherwise obstruct the Contract or efforts to close this sale.

Should you continue in your efforts or otherwise refuse to cooperate or act in good faith under the terms of the Contact or, in any way, attempt to undermine the sale, then my client is entitled to commence a legal action seeking the following relief:

1. Specific Performance of the Contract, thereby compelling you to perform all obligations owned thereunder and proceed with the sale; and/or

Mr. Kemmal France
August 29, 2025
Page 2

2. Partition pursuant to Article 9 of the Real Property Actions and Proceedings Law, to compel a court-ordered sale of the Premises and distribution of proceeds, together with recovery of attorneys' fees and costs.

Further, aside from explicitly reserving the right to commence the aforementioned legal actions, please allow this letter to serve as formal notice that if the sale fails to close due to your actions or inactions, my client will hold you fully responsible for all resulting losses and expenses, including but not limited to:

- Any reduction in ultimate sale price on a future resale;
- Any additional mortgage interest, fees, or penalties incurred;
- Any transactional costs, carrying costs, taxes, or attorneys' fees caused by your breach.

This letter therefore constitutes a formal demand that you:

- Immediately cease all efforts to renegotiate the mortgage or alter the agreed-upon financing arrangements;
- Confirm in writing your intention to perform under the May 21, 2025 contract; and
- Cooperate fully in executing all documents and taking all actions necessary to close the sale.

If written confirmation is not received within ten (10) days of the date of this letter that you agree to cooperate fully in this transaction per your obligations under the Contract (email notification to my attention shall be deemed sufficient), I will proceed to initiate litigation on behalf of my client (in accordance with the above) without further notice to you.

This demand is made in good faith in an effort to resolve the matter without court intervention. However, please be advised that my client is fully prepared to pursue all remedies available to her under law, including recovery of monetary damages and legal fees.

I can be reached at (845) 286-3280 or john@mcgowan.law should there be any questions or concerns. This letter is sent with all rights, both legal and equitable based in statute or otherwise, expressly reserved. Please be guided accordingly.

Very truly yours,

McGOWAN LAW, PLLC

/s/ John W. McGowan

JOHN W. McGOWAN

cc: Joy Diviny, Esq.
Attorney for Sellers, Iesha Frazier and Kemmal France
(*via email:* joy@jdivlaw.com)

FILED: ROCKLAND COUNTY CLERK 10/24/2025 04:24 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 10/24/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 65 of 124

Mr. Kemmal France
August 29, 2025
Page 3

Jeffrey Yanowitz, Esq.
Attorney for Purchasers, Chaya M. Goldstein and Daniel Goldstein
(*via email:* *jvanowitz@loewenberglaw.com*)

Iesha Frazier
(via email: ieshaf79@gmail.com)

# **<u>Exhibit D</u>**

(Affidavit of Service re: Summons and Complaint)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-----------------------------------------------------------------X

IESHA FRAZIER,

                              **Plaintiff,**

       -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                          **Defendants.**

-----------------------------------------------------------------X

**Index No.: 037483/2025**

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK, COUNTY OF WESTCHESTER:SS.:

    **James Bruen,** being duly sworn deposes and says:

    I am not a party to this action, and am over the age of 18 years and reside in Westchester, New York.

    On October 31, 2025, at 11:25 A.M., at 33 De Halve Maen Drive, Stony Point, NY 10980, I served a true copy of the NOTICE OF ELECTRONIC FILING (dated October 24, 2025) and SUMMONS & COMPLAINT (dated October 24, 2025), in connection with the above-entitled action, in the following manner:

☒ ☐     by delivering a true copy of same to **Kemmal France** personally; deponent knew the person so served to be the individual described in said documents

☐     by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below

☐☐     by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by the attorney for that purpose. In doing so, I received a signal from the equipment of the attorney indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below

☐     by depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below

**A description of Kemmal France is as follows: Male, Black Skin, Black Hair, 40-45 Yrs., 5'10" Height, 200-210 Lbs.**

                                                     _____
                                                     James Bruen

Sworn to before me this 3rd day of November, 2025

_____
NOTARY PUBLIC

NOEL F BRUEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BR6057458
Qualified in Putnam County
Commission Expires April 16th, 2027

# **Exhibit E**

(Motion for Default Judgment)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,                                                    Index No. 037483/2025

                         Plaintiff,                  **NOTICE OF MOTION**

      -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                       Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

PLEASE TAKE NOTICE that upon the annexed Affirmation of John W. McGowan, Esq., dated the 8th day of December, 2025, and the exhibits annexed thereto, together with the Affirmations of Iesha Frazier, Chaya M. Goldstein, and Daniel Goldstein, and upon all prior pleadings and proceedings herein, Plaintiff Iesha Frazier will move this Court at the Supreme Court of the State of New York, County of Rockland, located at 1 South Main Street, New City, New York, at 9:30 a.m. on the 5th day of January, 2026, or as soon thereafter as counsel may be heard, for an Order pursuant to CPLR § 3215 granting default judgment against Defendant Kemmal France and awarding the relief demanded in the Verified Complaint, including specific performance of the Residential Contract of Sale, directing Defendant to execute all documents necessary to complete the sale of the real property located at 33 De Halve Maen Drive, Stony Point, New York, together with such other and further relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that pursuant to CPLR § 2214(b), answering papers, if any, are required to be served on the undersigned at least seven (7) days before the return date of this motion.

Dated: December 8, 2025
      New City, New York

Yours, etc.,
McGOWAN HARRINGTON PARISI, PLLC
*Attorneys for Plaintiff, Iesha Frazier*
222 North Main Street
New City, New York 10956


By: /s/ John W. McGowan

      JOHN W. McGOWAN
      Tel. No.: (845) 323-4940
      Fax No.: (845) 286-3618
      Email: jmcgowan@mhp.law

TO:    KEMMAL FRANCE
        33 De Halve Maen Drive
        Stony Point, New York 10980

        JEFFREY B. YANOWITZ, ESQ.
        Loewenberg & Yanowitz, LLP
        *Attorneys for Defendants*
        *Chaya M. Goldstein and Daniel*
        *Goldstein*
        155 North Main Street
        New City, New York 10956

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,

                    Plaintiff,

        -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

Index No. 037483/2025

**AFFIRMATION IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

JOHN W. McGOWAN, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1.     I am a member of McGOWAN HARRINGTON PARISI PLLC, attorneys for Plaintiff Iesha Frazier ("Plaintiff") herein, and as such, I am fully familiar with the facts of this case.

2.     I submit this Affirmation in support of Plaintiff's motion for an Order, pursuant to Civil Practice Law and Rules ("CPLR") § 3215, granting default judgment against Defendant Kemmal France ("Defendant") and awarding the relief demanded in the Verified Complaint including an order directing specific performance of the Residential Contract of Sale dated May 21, 2025 (the "Contract of Sale").

3.     This action was commenced on or about October 24, 2025, upon the filing of the Summons and Verified Complaint (collectively, the "Complaint") with the Supreme Court of the State of New York, County of Rockland, under Index Number 037483/2025. A true and correct copy of the Complaint, along with its exhibits, are annexed hereto collectively as Exhibit "1."

4.     Plaintiff filed the following exhibits with the Complaint:

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
NYSCEF DOC. NO. 6
INDEX NO. 037483/2025
RECEIVED NYSCEF: 12/08/2025

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 72 of 124

a)      Residential Contract of Sale dated May 21, 2025. *See* Exhibit 1; and

b)      Demand Letter dated August 29, 2025. *Id*.

5.      The Complaint alleges, *inter alia*, that Defendant has failed to comply with his contractual obligations as co-owner and signatory to the Contract of Sale to effectuate the sale of property located at 33 De Halve Maen Drive, Stony Point, New York (the "Property").

6.      On or about November 4, 2025, Plaintiff filed an Affidavit of Service establishing that Defendant was personally served with the Complaint on October 31, 2025 within New York State (specifically, at the Property) pursuant to the CPLR § 308(1). A true and correct copy of the Affidavit of Service is annexed hereto as Exhibit "2."

7.      As Defendant was duly and personally served on October 31, 2025 (*see* Exhibit "2"), Defendant was required to appear, answer, or otherwise respond to the Complaint no later than November 21, 2025. *See* CPLR § 320(a) (McKinney's 2025); *see also* New York General Construction Law § 20 (McKinney's 2025).

8.      To date, despite proper service, Defendant has failed to appear, answer, or otherwise respond to the Complaint within the time permitted under the CPLR and his default is therefore established.

9.      An Affirmation of Non-Military Status of Defendant dated December 6, 2025, is annexed hereto as Exhibit "3."

10.     An Affirmation of Non-Expiration of the Statute of Limitations dated December 8, 2025 is annexed hereto as Exhibit "4."

11.     As set forth in accompanying Affirmations of Iesha Frazier ("Frazier Aff."), Chaya M. Goldstein, Daniel Goldstein dated December 5, 2025, Defendant has willfully refused to perform his obligations under the Contract of Sale, including refusing to communicate with

counsel, failing to undertake required pre-closing actions, and failing to appear for the June 20, 2025 closing or execute transfer documents, which has directly prevented the sale from closing and contributed to the ongoing foreclosure risk on the Property.[1]

12.     Plaintiff has established her entitlement to default judgment pursuant to CPLR § 3215. Defendant was properly served, has failed to appear or answer, and Plaintiff has submitted proof of the facts constituting her claim through the Frazier Aff. and the documentary evidence filed with the Complaint. *See Jean v. Csencsits*, 171 A.D.3d 1149 (2d Dep't 2019); *see also Equities v. Parker*, 2022 N.Y. Misc. LEXIS 4017 (Sup. Ct., Bronx County, Apr. 25, 2022, No. 815615/2021E).

13.     Plaintiff has demonstrated the existence of a valid and enforceable Contract of Sale for the Property, her full cooperation and readiness to perform, and Defendant's unjustified refusal to close. Real property is unique as a matter of law, and specific performance is the appropriate remedy where, as here, a seller refuses to convey title in breach of a fully executed contract of sale. *Latora v. Ferreira*, 102 A.D.3d 838, 839 (2d Dep't 2013) ("[a] party seeking specific performance of a contract for the sale of real property is required to establish not only that he or she was ready, willing and able to close on the scheduled closing date, but also that the other party was in default") (internal citations omitted).

14.     Defendant's failure to participate in the closing or execute the required conveyance documents has caused the sale to risk collapse, exposed the Property to ongoing foreclosure risk, and prejudiced Plaintiff's ability to satisfy the mortgage obligations. No

---

[1] Of note, there is a pending foreclosure action for the Property captioned *Nationstar Mortgage LLC v. France, et al.,* under Rockland County Index No. 030423/2025, wherein both Iesha Franzier and Kemmal France are named as defendants. The sale of the Property pursuant to the Contract of Sale—the relief sought by Plaintiff in this action— would render the foreclosure proceedings moot as the proceeds of the sale would be used to satisfy the mortgage obligation.

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 12/08/2025
25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 74 of 124

adequate remedy at law exists, and equitable relief is necessary to effectuate the Contract of Sale executed by all parties.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant her motion in its entirety, enter default judgment against Defendant, direct specific performance of the Contract of Sale, compel Defendant to execute all documents necessary to complete the closing, and grant such other and further relief as the Court deems just and proper.

Dated:  New City, New York
        December 8, 2025

/s/ John W. McGowan

**JOHN W. McGOWAN**

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
NYSCEF DOC. NO. 6

INDEX NO. 037483/2025

RECEIVED NYSCEF: 12/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 75 of 124

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Rule 202.8-b(c) of the Uniform Civil Rules for the Supreme Court and the County Court that the total number of words in the foregoing submission, inclusive of point headings and footnotes, and exclusive of pages containing the caption, table of contents, table of authorities, signature block and certificate of compliance, or any authorized addendum containing statutes, rules, and regulations, etc., is 881 and thus complies with Rule 202.8-b(a).

Dated: New City, New York
       December 8, 2025


_/s/ John W. McGowan_
**JOHN W. McGOWAN**

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

IESHA FRAZIER,

                     Plaintiff,

     -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                     Defendants.

-------------------------------------------------------------------X

|  |  |
|---|---|
| Index No.: | |
| Date Purchased: | |

**SUMMONS**

To the above named Defendant(s)

       You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

       The basis of venue is the location of property subject to the instant action which is 33 De Halve Maen Drive, Stony Point, NY 10980, pursuant to CPLR § 507.

Dated: Tarrytown, New York
       October 24, 2025

                   Yours, etc.,
                   McGOWAN HARRINGTON PARISI PLLC
                   *Attorneys for Plaintiff, Iesha Frazier*
                   222 N. Main Street, New City, NY 10956
                   120 White Plains Road, Tarrytown, NY 10591

                   By: _____
                       JOHN W. McGOWAN, ESQ.
                       Tel. No.: (845) 323-4940
                       Fax No.: (845) 286-3618
                       Email: jmcgowan@mhp.law

**Defendants' Addresses:**
Kemmal France
33 De Halve Maen Drive
Stony Point, NY 10980

Chaya M. Goldstein
20 Truman Avenue
Spring Valley, New York 10977

Daniel Goldstein
20 Truman Avenue
Spring Valley, New York 10977

1

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 78 of 124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------X

IESHA FRAZIER,

                        Plaintiff,

    -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                        Defendants.

----------------------------------------------------------------X

Index No.:
Date Purchased:

**VERIFIED COMPLAINT**

Plaintiff, IESHA FRAZIER, through her attorneys McGOWAN HARRINGTON PARISI

PLLC complaining of Defendants KEMMAL FRANCE, CHAYA M. GOLDSTEIN, AND

DANIEL GOLDSTEIN, alleges, upon information and belief, as follows:

**THE PARTIES**

1.     At all relevant times, Plaintiff Iesha Frazier ("Plaintiff" or "Ms. Frazier") was and still

is a natural person residing in Bronx County, New York.

2.     At all relevant times, Defendant Kemmal France ("Defendant" or "Mr. France")

was and still is a natural person residing in Rockland County, New York.

3.     At all relevant times, Plaintiff and Defendant (collectively, the "Sellers") were

tenants in common and co-owners of certain real property located at 33 De Halve Maen Drive,

Stony Point, New York 10980 (the "Property" or "Premises").

4.     Defendants Chaya M. Goldstein and Daniel Goldstein (collectively, the

"Purchasers") are joined pursuant to Civil Practice Law and Rules ("CPLR") § 1001(a) as

persons whose contractual interests in the Property may be affected by the judgment. No relief is

sought against them.

1

2 of 11

## JURISDICTION AND VENUE

5.    The Court has jurisdiction over this action pursuant to CPLR § 301 as the parties are domiciled in and/or conduct business in the State of New York. Venue is proper in Rockland County pursuant to CPLR § 507 because the judgment demanded would affect the title to, or the possession, use or enjoyment of the Premises.

## FACTUAL ALLEGATIONS

6.    Plaintiff repeats and reiterates that, at all relevant times, Plaintiff and Defendant were tenants in common and co-owners of the Property.

7.    The Property is a single-family residential dwelling, identified on the Rockland County Tax Map as Section 20.09, Block 2, Lot 36.

8.    The Property is currently encumbered by a mortgage held by a financial institution doing business within the State of New York.

9.    Said mortgage is the subject of a foreclosure action pending in the Supreme Court of the State of New York, County of Rockland, titled *Nationstar Mortgage, LLC v. Kemmal France, et al.*, Index No. 030423/2025 (the "Foreclosure Action").

10.    On or about May 21, 2025, Plaintiff and Defendant, as sellers, jointly entered into a written Residential Contract of Sale (the "Contract") with Purchasers for the sale of the Property.

11.    Pursuant to the Contract, the total purchase price for the Property was Six Hundred Fifty Six Thousand Dollars ($656,000.00). A true and correct copy of the Contract is annexed hereto as Exhibit ("Ex.") "A."

12.    · The Contract was executed by Plaintiff and Defendant using DocuSign, and by the Purchasers through their attorney, Jeffrey Yanowitz, Esq. (the "Purchasers' Attorney"), thereby memorializing the agreement to sell the entire Property.

2

13.    Pursuant to the terms of the Contract, the closing of title (the "Closing") was scheduled to occur on or about June 20, 2025, at a location designated by the Purchasers or, alternatively, at the office of the Sellers' attorney, Joy D. Diviny, Esq. (the "Sellers' Attorney"), located in Rockland County, New York.

14.    Upon information and belief, a downpayment of $65,600.00 paid by the Purchasers is being held by Sellers' Attorney acting as the escrow agent.

15.    The Contract required that the Sellers deliver good and marketable title by bargain and sale deed with covenants against grantor's acts, free of all encumbrances except those stated in the Contract.

16.    The Contract contemplated that the sale proceeds would be sufficient to satisfy the outstanding mortgage encumbering the Property in full at the time of Closing.

17.    Following execution of the Contract, Plaintiff performed all obligations required of her and remained ready, willing, and able to proceed to Closing on the date specified in the Contract.

18.    Upon information and belief, Mr. France did not cooperate in the performance of the Contract and failed to respond to communications from Plaintiff, the Sellers' Attorney, and the Purchasers' Attorney regarding the scheduled Closing.

19.    On or about June 20, 2025, upon information and belief, the scheduled Closing did not occur due, in whole or in part, to Mr. France's lack of cooperation and failure to appear and/or execute the necessary transfer documents.

20.    As of that same date, Plaintiff remained in contact with the Purchasers' Attorney and confirmed her continued willingness to complete the sale as set forth in the Contract.

21.    On or about August 28, 2025, Plaintiff, through counsel, transmitted a written demand letter (the "Demand Letter") to Mr. France by certified mail and email at Defendant's

3

address and known email account, directing his immediate cooperation in completing the closing

of the sale of the Property pursuant to the Contract. A true and correct copy of the Demand

Letter is annexed hereto as Ex. "B."

22. Mr. France did not respond to the Demand Letter and has not taken any steps to proceed with or finalize the sale of the Property.

23. As a result of Defendant's inaction, the sale has not closed and the Property remains subject to the pending Foreclosure Action in Rockland County.

24. Plaintiff continues to maintain responsibility for the Property and remains prepared to convey title to the Purchasers upon Defendant's cooperation, pursuant to the Contract signed by both her and Mr. France.

25. The Purchasers have expressed a continued interest in completing the purchase, and Plaintiff, either directly or through counsel, has communicated this to Defendant on multiple occasions.

26. Plaintiff has incurred additional costs and expenses associated with the Property, including attorneys' fees, during the period in which Defendant has failed to cooperate with the sale.

27. Plaintiff has made multiple attempts to resolve the matter without court intervention, including communications through counsel, but Defendant has not responded and/or otherwise rejected attempts to proceed with the sale per the Contract.

## AS AND FOR A FIRST CAUSE OF ACTION
### (*Specific Performance*)

28. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "27" above as though fully set forth herein.

29. On or about May 21, 2025, Plaintiff and Defendant jointly entered into the

4

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 1 25-23170-dsj Doc 16 Filed 02/24/26 Entered 02/24/26 11:51:09 Main Document RECEIVED NYSCEF: 10/08/2025

Pg 82 of 124

Contract with the Purchasers for the sale of the Property.

30. The Contract is valid, binding, and enforceable upon both Plaintiff and Defendant.

31. Plaintiff has performed all obligations required of her under the Contract and has at all times remained ready, willing, and able to proceed with the sale and closing of title.

32. Defendant has failed and refused to perform his obligations under the Contract, including appearing for closing and executing the documents necessary to convey title to the Purchasers.

33. The Property is unique, and Plaintiff has no adequate remedy at law for Defendant's refusal to perform his obligations under the Contract.

34. Plaintiff is entitled to a judgment directing Defendant to specifically perform the Contract of Sale, including but not limited to the execution and delivery of all documents required to complete the closing and convey title to the Purchasers.

35. Plaintiff is further entitled to such other and further relief as this Court may deem just and proper, including costs and disbursements incurred herein.

## AS AND FOR A SECOND CAUSE OF ACTION
### (*Breach of Contract*)

36. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "35" above as though fully set forth herein.

37. Defendant's refusal and failure to perform his obligations under the Contract of Sale dated May 21, 2025 constitute a material breach of that Contract.

38. As a result of Defendant's breach, the scheduled closing of title did not occur, and Plaintiff has sustained damages, including but not limited to loss of anticipated sale proceeds, additional carrying costs, legal expenses, and exposure to foreclosure proceedings against the Property.

5

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 83 of 124

## AS AND FOR A THIRD CAUSE OF ACTION
### (*Declaratory Judgment*)

39. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "38" above as though fully set forth herein.

40. An actual and justiciable controversy exists between Plaintiff and Defendant regarding the validity, enforceability, and performance of the Contract of Sale dated May 21, 2025, and the parties' respective rights and obligations with respect to the sale of the Property.

41. Plaintiff seeks a declaratory judgment pursuant to CPLR § 3001 declaring that:

    A. The Contract dated May 21, 2025 is valid, binding, and enforceable;

    B. Plaintiff is authorized to proceed with the sale of the Property and to complete the closing in accordance with the terms of the Contract; and

    C. The proceeds of sale shall be applied to satisfy the outstanding mortgage encumbering the Property, with any remaining proceeds distributed according to the parties' ownership interests.

42. Plaintiff further seeks such other and further declaratory relief as this Court may deem just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (*Partition and Sale*)

43. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "42" above as though fully set forth herein.

44. Plaintiff and Defendant are tenants in common, each owning an undivided one-half (½) interest in the Property.

45. In the event the Contract of Sale dated May 21, 2025 cannot be specifically enforced for any reason, Plaintiff seeks partition of the Property pursuant to Article 9 of the Real Property Actions and Proceedings Law ("RPAPL") § 901 *et seq.* and a judicial sale of the

6

Property.

46.     Plaintiff requests that the proceeds of such judicial sale be applied first to satisfy any existing mortgage or lien encumbering the Property, and that the remaining net proceeds be distributed between Plaintiff and Defendant according to their respective ownership interests.

47.     Plaintiff further seeks such other and further relief as this Court may deem just and proper in connection with the partition and sale of the Property.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (*Injunctive Relief*)

48.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "47" above as though fully set forth herein.

49.     Defendant's ongoing refusal to perform his obligations under the Contract of Sale dated May 21, 2025, and his interference with the closing of title, have caused and will continue to cause irreparable harm to Plaintiff, including but not limited to the imminent risk of foreclosure, loss of the pending sale opportunity, and potential loss of Plaintiff's ownership interest in the Property.

50.     Plaintiff has no adequate remedy at law, as monetary damages alone cannot remedy the loss of unique real property or the foreclosure of the parties' jointly owned home.

51.     Pursuant to CPLR §§ 6301 and 6311, Plaintiff seeks the issuance of a temporary restraining order and preliminary injunction:

A. Enjoining Defendant from interfering with, obstructing, or preventing the sale and closing of the Property pursuant to the Contract;

B. Enjoining Defendant from acting inconsistently with the terms of the Contract or with Plaintiff's efforts to complete the Sale; and

C. Staying the pending foreclosure action involving the Property pending the

7

resolution of this action.

52.     Plaintiff further requests such other and further equitable relief as this Court may deem just and proper.

**WHEREFORE**, Plaintiff respectfully requests the issuance of a judgment as follows:

a) on the First Cause of Action, directing Defendant to specifically perform the Residential Contract of Sale dated May 21, 2025 by executing all documents necessary to convey title to the Purchasers and cooperating in the completion of the sale;

b) on the Second Cause of Action, awarding Plaintiff damages from the Defendant in an amount to be determined at trial together with interest, costs, and attorneys' fees;

c) on the Third Cause of Action, declaring that the Residential Contract of Sale dated May 21, 2025 is valid, binding, and enforceable, that Plaintiff is authorized to proceed with the sale of the Property, and that the proceeds of sale shall be applied to satisfy the existing mortgage with the balance distributed according to the parties' ownership interests;

d) on the Fourth Cause of Action, in the alternative to specific performance, ordering partition and judicial sale of the Property pursuant to RPAPL § 901 *et seq.,* with proceeds distributed in accordance with the parties' respective ownership interests;

e) on the Fifth Cause of Action, issuing a temporary restraining order and preliminary injunction enjoining Defendant from interfering with or obstructing the sale and staying any foreclosure proceedings pending resolution of this action; and

8

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
INDEX NO. 037483/2025

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 10/08/2025

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 86 of 124

f) granting such other and further relief as the Court may deem just and appropriate,

together with costs and disbursements.

Dated: October 24, 2025
       Tarrytown, New York

                                   Yours, etc.,
                                   McGOWAN HARRIGNTON PARISI PLLC
                                   *Attorneys for Plaintiff*
                                   120 White Plains Road
                                   Tarrytown, New York 10591

                         By: _____
                                   JOHN W. McGOWAN, ESQ.
                                   Tel. No.: (845) 323-4940
                                   Fax No.: (845) 286-3618
                                   Email: jmcgowan@mhp.law

9

## VERIFICATION

STATE OF NEW YORK       )
                                    )ss.:

COUNTY OF WESTCHESTER    )

JOHN McGOWAN, being duly sworn, deposes and says;

I am an attorney at law duly admitted to practice law in the Courts of the State of New York and I am a member of the law firm of McGowan Harrington Parisi PLLC, attorneys for Plaintiff Iesha Frazier in the within matter. I have read the annexed Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters not stated upon knowledge, is based upon material contained in my file.

The reason why I make this verification is that my client is not located within the County where I maintain my office.

_____
John W. McGowan

Sworn to before me this
24th day of October, 2025

_____
Notary Public

STEPHANIE MONDELLO
Notary Public, State of New York
No 01MO4946377
Qualified in Putnam County
Certifcate Filed in Westchester County
Commission Expires 2/6/27

10

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
NYSCEF DOC. NO. 2

INDEX NO. 037483/2025
RECEIVED NYSCEF: 10/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 88 of 124

# EXHIBIT A

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document Pg 89 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

# CONTRACT OF SALE
## (ROCKLAND COUNTY APPROVED)

### THIS CONTRACT HAS BEEN APPROVED BY THE ROCKLAND COUNTY BAR ASSOCIATION

### CONTRACT OF SALE

**WARNING:** NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW "PLAIN ENGLISH."

**NOTE:** FIRE AND CASUALTY LOSSES: This Contract form does not provide for what happens in the event of fire or casualty loss before the title CLOSING. Unless different provision is made in this Contract, Section 5-1311 of the General Obligations Law will apply. One part of that Law makes a PURCHASER responsible for fire and casualty loss upon taking of title to, or possession of, the PREMISES.

| | |
|---|---|
| Date: | CONTRACT OF SALE made as of the 21st day of May, 2025 |
| Parties: | BETWEEN **Kemmal France and Iesha Frazier** |
| | 33 De Halve Maen Drive, Stony Point, NY 10980 |
| | hereinafter called "SELLER," who agrees to sell, and |
| | **Chaya M. Goldstein and Daniel Goldstein** |
| | hereinafter called "PURCHASER," who agrees to buy: |
| Premises: | The property, including all buildings and improvements thereon (the "PREMISES") more fully described on a separate page marked "Schedule A" and the personal property, if any, set forth on "Schedule B" and also known as: |
| | Street Address    33 De Halve Maen Drive, Stony Point, NY 10980 |
| | Tax Map Designation:  20.09-2-36 |
| Purchase Price: | 1.    The purchase price is:..................................$ 656,000.00 |
| | Payable as follows: |
| | (a)    On the signing of this Contract, by check subject to collection: .................$ 65,600.00 |

In the event that Purchaser finances this purchase with a mortgage loan and Purchaser's lender allows a "seller's concession" then both the Seller and the Purchaser shall cooperate in executing such addendums to the contract of sale which the lender may require. The Purchaser shall pay all costs associated with the concession including additional transfer tax.

(b)    Balance at Closing: .....................................$ 590,400.00

Page 1

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document   Pg 90 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

Escrow of:  2.  The down-payment herein shall be held in escrow by SELLER'S attorney (the"Escrow Agent")

(a)  Down payment:   In an IOLA account at **Orange Bank & Trust, New City, New York** until CLOSING, or until this Contract is otherwise rendered null and void pursuant to its terms, and thereafter shall be disbursed to SELLER or PURCHASER, as the case may be. In the event of a dispute as to whom is entitled to such sum, and a Notice of a demand for the down payment is sent by either of the parties to the other, the Escrow Agent may
(i)  continue to retain such sum in escrow or (ii) deposit such sum in theCourt of pending litigation. However, in the event no notice of objectionis received from the other party within 10 days of receipt of the demandnotice, the Escrow Agent may release the down payment to the demanding party.

(b)  The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the EscrowAgent shall not be deemed to be the agent of either of the parties, and that the Escrow Agent shall not be liable to either of the parties for anyact or omission on his part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. SELLERand PURCHASER shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of this Contract or involving gross negligence on the part of the Escrow Agent. The Escrow Agent shall have no duty to invest any of the funds deposited with him hereunder and shall not be responsible for any action or failure to act, unless said action or failure demonstrates bad faith.

(c)  In the event that the down payment check given by PURCHASER pursuant to the terms and conditions of this Contract is returned for "Insufficient Funds" or not honored by any bank for any reason whatsoever, not caused by the Purchaser, unless PURCHASER delivers a bank check for said amount to SELLER'S attorney within three (3) days of said dishonor, plus the cost of bank charges incurred as a resultof the check being dishonored, this Contract shall be deemed null and void.

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 91 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| | |
|---|---|
| Defaults by Purchaser: | 3. In the event PURCHASER willfully fails to make any payments due under this Contract, willfully fails or refuses to sign any documents required to close title, willfully refuses to pay any costs required by this Contract or willfully fails to keep any material promises made by PURCHASER pursuant to this Contract, SELLER shall provide written notice of PURCHASER'S failure (also known as a "willful default"). If PURCHASER fails to correct a willful default within fifteen (15) days after receipt of notice from SELLER, SELLER may terminate this Contract, and retain the down payment made hereunder. The amount retained by Seller shall be considered "liquidated damages" based upon an understanding between the parties hereto that SELLER will have suffered damages due to the withdrawal of the PREMISES from sale to the general public. The damages suffered by SELLER as a result thereof will be substantial, but incapable of determination with mathematical precision. It is, therefore, agreed by the |

parties that the amount retained by SELLER is not a penalty, but rather a mutually beneficial estimate of the damages suffered by SELLER.

| | |
|---|---|
| Defaults by Seller: | 4. If SELLER willfully defaults hereunder, PURCHASER shall have such remedies as PURCHASER is entitled to at law or in equity, including, but not limited to, specific performance. |
| Acceptable Funds: | 5. All money payable under this Contract, unless otherwise specified, shall be either: |

    (a)    Cash, or personal check, but not over one thousand Dollars ($1,000.00);

    (b)    Official check of any bank, savings bank, trust company, or saving and loan association having a banking office in the State of New York, payable to the direct order of SELLER; or

    (c)    As otherwise agreed to or requested within five (5) days of CLOSING in writing by SELLER or SELLER'S attorney.

**Subject to Provisions:**

6. The PREMISES are sold and conveyed subject to the following:

(a) Any state of facts an accurate survey or physical inspection may show, provided same does not render title uninsurable at normal rates;

(b) Covenants, restrictions, easements, reservations, consents and Contracts of record, if any, provided same are not violated by theexisting dwelling structure and present use thereof;

(c) Rights of record, if any, acquired by any utility company to maintain andoperate lines, wires, cables, poles and distribution boxes, in, over and upon the PREMISES; and

(d) Laws and governmental regulations that affect the use and maintenanceof the PREMISES, provided they are not violated by the buildings and improvements erected on the PREMISES.

The Sale is subject to the stated items above, provided they do not render title uninsurable at standard rates, do not prohibit the current and/or legal use of the Premises, and do not contain any outstanding options, purchase rights or require any affirmative risk or monetary payments and do not contain any provision whereby a future violation will result in forfeiture or reversion of title. Furthermore, the sale is subject to any easements and right-of-way of record provided they are located within 10 (ten) feet of the property boundary line.

**Title Company Approval:**

7. SELLER shall give and PURCHASER shall accept such title as NYS licensed title insurer shall be willing to approve and insure in accordance with the standard form of title insurance policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract. If available, Sellershall supply any documents (including prior title insurance policies and existing surveys, if any) and/or affidavits reasonably requested by Purchaser's title insurance company and required thereby for the issuance of title insurance policies to Purchaser and Purchaser's mortgagee, if any. Sellers represent they are: 1) Not subject to the provisions of Section 265-a Real Property Law of the State of New York(Equity Theft Prevention Act); 2) Not subject to a Short-Sale, requiring the approval of any Lien Holder.

**Closing Defined and Form of Deed:**

8. "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other under this Contract, including the payment of the balance of the purchase price to SELLER, and the delivery to PURCHASER of aBargain & Sale Deed with Covenants Against Grantor's Acts in proper statutory form for recording so as to transfer to PURCHASER full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The Deed will contain the covenant by SELLER as required by Section13 of the Lien Law.

Docusign Envelope ID: A066E1F4-3C64-47BD-A1CF-81E18820183D

| | | |
|---|---|---|
| Corporate Seller: | 9. | If SELLER is a corporation, SELLER shall provide to PURCHASER at the time of CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the Deed; (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law; and (c) any and all further documents reasonably required to show that the corporation is authorized to sell and deliver the Deed pursuant to Law. The Deed in such case shall contain a recital sufficient to establish compliance with that Section. |

Closing Date and Place:

10. CLOSING will take place at the office designated by PURCHASER'S lender; or

[X ] office of SELLER'S attorney, or

[ ] other.

On or about June 20, 2025

It is understood by and between the parties that the CLOSING shall take place within the confines of Rockland County and PURCHASER represents that PURCHASER will make application to a lending institution which closes the mortgage loan within the County of Rockland; failing which, PURCHASER shall pay to SELLER, at CLOSING, *the additional sum of $500.00 for a county contiguous to Rockland, or $750.00 for any other county,* to compensate SELLER for their additional legal fees. The travel fee, if applicable, shall be reflected on the closing statement as a credit to the Seller.

Possession:

11. In the absence of a written Contract to the contrary, possession of the PREMISES shall be delivered at CLOSING, vacant and broom clean, except as to articles of personal property passing to PURCHASER under the terms of this Contract.

Broker:

12. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than  EXP Realty   and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate Contract).

Streets and Assignments of Unpaid Awards:

13. This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver, at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages.

| | | |
|---|---|---|
| Seller's Representations: | 14. | SELLER makes the following warranties and representations: |

(a)   The street address of the PREMISES is:

**33 De Halve Maen Drive  Stony Point, NY  10980**

(b)   The current real estate taxes for the PREMISES are of public record, and SELLER does (not) have the benefit of exemptions;

(c)   To SELLER'S best knowledge, there are no current or proposed assessments of any type affecting the subject PREMISES; and

(d)   SELLER is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

(e)   The SELLER further represents that:

(1)   The Premises and the present use and condition thereof do not violate any applicable deed restrictions or other covenants, restrictions or agreements applicable to the Premises;

(2)   No notice of notices of violation of law or municipal ordinances or of Federal, State, County or Municipal or other governmental agency regulations, orders or requirements relating to the Premises have been entered or received by Seller and Seller has no reason to believe that any such note or notice may or will be entered;

(3)   There is no action or proceeding (zoning or otherwise) or governmental investigation pending, or, to the knowledge of Seller, threatened or relating to Seller, the Premises or the transaction contemplated by this agreement, nor, to the knowledge of Seller, is there any basis for such action.

(4)   Seller has no knowledge of an existing underground oil tank on the Premises.

(5)   The Premises is serviced by: VEOLIA water(municipal water) and municipal sewer service/septic service.

(6)   Seller has full authority to transfer title to the Premises pursuant to this agreement. Except as specified herein, no person, firm or entity has any right to acquire the Premises or any rights or estates in and to the Premises;

(7)   The execution of this Contract and Seller's performance hereunder does not violate any judgment, order, injunction, decree or award of any court, administrative agency or governmental body applicable to Seller or the Premises; and,

(8)   The Premises abut a public road.

(9)   That the premises are not part of an HOA.

Mortgage
Contingency:

15. (a) PURCHASER'S obligation under this Contract is subject to, and contingent upon, PURCHASER obtaining, at PURCHASER'S own cost and expense, a mortgage commitment in the sum of $524,800.00, repayable over a period of thirty (30) years with interest at the prevailing rate per annum, as shall be then charged by such lending institution, registered mortgage broker or licensed mortgage banker, plus any applicable "points," discount charges or loan origination fees. PURCHASER warrants and represents that PURCHASER will, diligently and in good faith, apply for said mortgage no later than seven (7) days after the receipt of a fully executed copy of this Contract by PURCHASER'S attorney, and as the same may be extended by the parties or their attorneys, and will promptly furnish all reports, documents, verifications and/or fees required in connection therewith. PURCHASER agrees to promptly send to SELLER'S attorney a copy of any bank letter received by PURCHASER granting or declining the mortgage commitment. In the event PURCHASER does not obtain said mortgage commitment by **30 days after Purchaser's attorneys receipt of a fully executed contract**, after the exercise of good faith, then this Contract shall be deemed null and void at the option of either party to this Contract, communicated to the other party, or to the other party's attorney, in writing, via the United States Postal System or by electronic mail; and SELLER'S sole liability thereunder shall be the return of all monies paid pursuant to this Contract. If, however, prior to actual denial of PURCHASER'S mortgage application, PURCHASER elects to cancel this Contract pursuant to the provisions of this Paragraph; SELLER may, by notice to PURCHASER'S attorney given within three (3) days thereafter, unilaterally extend the time, for an additional period of not more than thirty (30) days, for PURCHASER to obtain the said mortgage commitment, during which period of time, PURCHASER shall continue to diligently pursue PURCHASER'S efforts to obtain such mortgage commitment.

(b) A commitment requiring PURCHASER to sell any property, or to discharge any debt, as a condition precedent to closing of the mortgage loan, shall be deemed to be a "mortgage commitment" which shall satisfy the contingent aspect of Paragraph 15(a); however, a Commitment Letter which is subject to an appraisal of the PREMISES, or a credit report of PURCHASER, or a P.M.I. application, and/or verification of PURCHASER'S income, assets or source of funds shall not be deemed to be a "mortgage commitment" for purposes of Paragraph 15(a).

(c) If PURCHASER is unable to obtain a commitment for such mortgage, SELLER'S attorney shall, upon request, have the right to see copies of the application filed by PURCHASER with the proposed mortgagee. If requested, PURCHASER will request, in writing, that the proposed mortgagee send a copy of the application to SELLER'S attorney.

(d) In the event that PURCHASER receives a commitment for a new first mortgage in a sum less than the amount applied for, SELLER may reduce the Purchase Price by the amount of the difference between the mortgage applied for and the mortgage obtained and PURCHASER shall not have the right to declare this Contract null and void, if such modification is acceptable to PURCHASER'S mortgage lender.

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/08/2025
25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 96 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E188201830

(e) The Purchasers believe that, to the best of their knowledge, they are qualified from an income and credit standpoint, for the mortgage that they are seeking from the lending institution. Purchasers represent that they are applying for the mortgage loan solely in their own names and based solely upon their individual income, and that the mortgage application will not be processed by the lending institution on the basis of any additional income requirements for any other co-borrower, who is not a signatory to this contract of sale.

(f) It is specifically understood and agreed that all of the expenses related to the mortgage closing shall be borne solely by the Purchasers, and that the sellers shall have no responsibility for the payment of fees, escrows, or expenses to the lending institution. It is further understood and agreed, that the fact that the Seller had consented to making this contract contingent upon the ability of the Purchasers to secure a mortgage loan commitment does not imply any consent on the part of the seller to accept any obligations which may be imposed by the Purchaser's lending institution either with regard to the condition of the premises or the closing procedures of the lender, which would in any way amplify or extend the obligation of the Seller that are otherwise set forth in this contract of sale.-

**Mortgagee's Certificate or Letter as to Existing Mortgage(s)**

16. If the PREMISES are encumbered by an existing mortgage(s), SELLER agrees to deliver to PURCHASER at closing a duly executed Satisfaction of such Mortgage(s) in proper recordable form for such mortgage(s) together with the underlying note(s) and mortgage(s). SELLER shall pay the fees for recording such Satisfaction of Mortgage(s). If, however, the holder of a mortgage is a bank or other institution as defined in Section 274-a, Real Property Law, SELLER may, instead of the Satisfaction, furnish an unqualified letter signed by the holder of such existing mortgage(s) dated not more than thirty (30) days before CLOSING certifying the amount of the unpaid principal and interest and the per diem interest rate. **CLOSER PICK UP FEES SHALL BE LIMITED TO $250.00 PER PAYOFF INCLUSIVE OF OVERNIGHT FEES.**

**Compliance with State and Municipal Department Violations and Orders:**

17. (a) SELLER will comply with all notes or notices of violations of law, municipal ordinances, order or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the PREMISES at the date of CLOSING. The PREMISES shall be transferred free of them at CLOSING and this provision shall survive CLOSING. SELLER shall furnish PURCHASER with any authorizations necessary to make the searches that could disclose these matters.

(b) If the PREMISES are located within a jurisdiction which requires personal inspection of the PREMISES, SELLER will reasonably cooperate in obtaining the Certificate of Occupancy and Violation Searches.

**Violations of Record:**

18. If the cost of the removal of violations required to be removed by SELLER pursuant to the provisions of this Contract shall be in excess of Two Thousand Five Hundred Dollars ($2,500.00), SELLER is hereby granted an option to withdraw from this Contract; in which event, SELLER shall refund to PURCHASER the monies paid on the execution hereof, together with cost of survey and title and all items listed in paragraph 28, whereupon this Contract shall become null and void

Page 8

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
                                    Pg 97 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

without further liability from either party to the other, unless PURCHASER shall agree to take the title subject to said violations and assume the performance thereof and receive an abatement in reduction of the Purchase Price in the sum of Two Thousand Five Hundred Dollars ($2,500.00). the options herein granted shall be exercised by notice in writing by either part or electronic mail receipt confirmed, or their attorneys, o or before the time fixed for CLOSING, by certified mail, return receipt requested.

**Conditions of Closing:**

19. SELLER shall deliver, prior to CLOSING, to PURCHASER a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a

[ x ] one family dwelling; or

[ ] two family dwelling

at the date of CLOSING.

**Installment Assessment:**

20. If at the time of CLOSING the PREMISES are affected by an assessment, which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Contract all the unpaid installments shall be considered due and are to be paid by SELLER at CLOSING, unless the assessment is part of the State, County, Town taxes and/or Village taxes (if applicable), in which event same shall be adjusted in accordance with Paragraph 21 herein.

**Apportionments:**

21.  (a) The following are to be apportioned as of midnight of the date before CLOSING: Taxes, water charges and sewer rents, fuel, if any, and municipal solid waste fees, if any.

(b) Tax apportionments shall be made in accordance with the following procedure (the Rockland County Bar Association Resolution):

(1) State, County and Town Taxes shall be adjusted for the tax year from January 1st through December 31st;

(2) School Taxes shall be adjusted for the tax year from September 1st through August 31st;

(3) Village Taxes shall be adjusted for the tax year from June 1st through May 31st (unless the subject Village (e.g., Montebello, ,Airmont, Sloatsburg or New Hempstead) utilizes a different tax year, in which case, such tax year shall be the basis for adjustment);

(4) The taxes shall be computed on a 365-day basis; and

(5) PURCHASER shall pay the tax for the day upon which the adjustment is made (the day of CLOSING).

(c) If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

(d) Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall survive CLOSING, but in no event shall survival exceed sixty (60) days from the actual date of CLOSING.

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D    Pg 98 of 124

| | |
|---|---|
| Water Meter Readings: | 22. If there are water meter(s) and other utilities meters on the PREMISES, SELLER shall furnish a reading for each meter to a date not more than five (5)days before CLOSING and the unfixed utility meter charges, if any, shall be apportioned on the basis of such last reading. |
| Allowance for Unpaid Items: | 23. SELLER has the option to credit PURCHASER as an adjustment toward the Purchase Price with the amount of any unpaid taxes, assessments or utility charges, together with any interest and penalties thereon, to a date not less than three (3) business days after CLOSING, provided that official bills therefore, computed to said date, are produced at CLOSING. |
| Use of Purchase Price to Pay Seller Obligations: | 24. If there is anything else affecting the sale of which SELLER is obligated to payand discharge at CLOSING, SELLER may use any portion of the balance of thepurchase price to discharge same. As an alternative, SELLER may deposit money with the Title Insurance Company employed by PURCHASER and required by it to assure its discharge; but only if the Title Insurance Companywill insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES, and if acceptable to the mortgage lender. Upon request, made within a reasonable time before CLOSING, PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters. |
| Affidavit as to Judgments, Bankruptcies, etc. | 25. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of SELLER, SELLER shall deliver a detailed affidavit satisfactory to the Title Insurance Company insuring PURCHASER at CLOSING showing that they are not againstSELLER; the foregoing obligation shall survive CLOSING. |
| Deed Transfer and Recording Taxes: | 26. At CLOSING, SELLER shall deliver a check or other acceptable funds payable to the order of the Rockland County Clerk, or to the Title Insurance Company,in the amount of any applicable transfer tax payable by reason of the recording of the Deed, together with any required tax return. SELLER pays transfer taxes and will deliver a check at closing for the transfer taxes. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the Title Insurance Company representative at CLOSING. |
| Purchaser's Lien: | 27. All money paid on account of this Contract, the reasonable expenses of examination of the title to the PREMISES and any survey and survey inspection charges are hereby made liens on the PREMISES and collectable out of the PREMISES. Such liens, however, shall not continue after default in performance of this Contract by PURCHASER (the term "default" being hereindefined in Paragraph 3 above). |
| Seller's Inability to Convey; Limitation of Liability: | 28. If SELLER is unable to transfer title to PURCHASER in accordance with this Contract, SELLER'S sole liability shall be to refund all money paid on accountof this Contract, plus all charges incurred for: (i) examining the title; (ii) any appropriate additional searches made in accordance with this Contract; (iii) survey and survey inspection charges; (iv) prepaid non-refundable lenders fees, not to exceed 1% of the mortgage amount; (v) credit check and appraisal fees in the actual amounts incurred; and (vi) engineers inspection fees. The total of (i) – (vi) above shall not to exceed One Thousand Dollars ($1,000.00). Upon such refund and payment, this Contract shall be |

considered canceled, and neither SELLER nor PURCHASER shall have any further rights against the other party. Notwithstanding anything contained herein, the Seller shall be obligated to cure and satisfy all voluntary mortgages, liens and encumbrances on the Property and shall cause all title exceptions with respect to such voluntary mortgages, liens and encumbrances to be omitted from the title report at or prior to closing.

**Condition of Premises:**

29. The PREMISES are sold in an "AS IS" physical condition and SELLER makes no representations other than that the roof is free of leaks, basement is free of standing water, and the plumbing, heating and electrical systems, appliances, air-conditioning systems, if applicable, well, septic system, if applicable, and items of personal property to be conveyed to PURCHASER under this Contract, now in said dwelling, are in working order and will be in such condition at the time of transfer of possession to PURCHASER, normal wear and tear excepted; and that the premises will be delivered free of debris. This Paragraph shall not be construed as a warranty surviving transfer of possession. The limit of SELLER'S liability for non-working appliances, however, shall be the market value of such appliances in their condition as of the date hereof.

**Maintenance:**

30. It shall be the obligation of SELLER to maintain the PREMISES, both interior and exterior, in present condition, except as may be otherwise set forth herein, until the transfer of possession of the PREMISES to PURCHASER.

**Inspection:**

31. PURCHASER shall have access to the PREMISES at reasonable times upon reasonable notice and within forty eight (48) hours prior to CLOSING or taking possession, with all utilities in service, in order to ascertain the condition of the PREMISES with regard to Paragraphs "11," "29" and "30" herein.

**Notices:**

32. All notices required or permitted pursuant to this Contract shall be in writing and forwarded to the other party's attorney at the office address of such party's attorney via the United States Postal Service, certified mail, return receipt requested; and such notice shall be deemed given on the third (3rd) business day following mailing of such notice. Alternatively, a notice may be delivered by an overnight delivery service, or by facsimile or via email, but in any case, such notice shall be deemed made upon the date such notice is actually received by the attorney. However, a notice of default or cancellation shall only be made by certified mail return receipt requested or via overnight carrier.

**Closing Funds:**

33. PURCHASER does hereby personally guarantee all funds that shall be transmitted by PURCHASER, or on their behalf, to SELLER at the time of CLOSING as and for the balance of the Purchase Price and apportionments; it being understood that this personal guaranty shall survive the delivery of the Deed.

**Headings:**

34. The paragraph headings in this Contract are for convenience only and have no legal significance.

**Inspections:**

35. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

property included in this sale. Based on Purchaser's own inspection and investigation thereof, Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or other property included in this sale. Purchaser further represents that they are not relying on any information of any type given or made by Seller or its representatives, except as represented in paragraph 29 above, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing. Furthermore, Purchaser shall not ask for any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract except as other.

<u>Lead-Based Paint.</u>

(a) At the Purchaser's sole expense, the Purchaser shall have the right to conduct a risk assessment or inspection of possible lead-based paint hazards on the dwelling, which was constructed prior to 1978. This assessment or inspection shall be performed within ten days hereof. If the results of such test indicate that the presence of lead-based paint hazards, a copy of the report issued by the risk assessor inspector together with a written contract addendum listing the specific existing deficiencies and recommended remedial action together with the cost thereof shall be served upon the Seller's attorney within five days from the date of the report. Upon receipt of such Notice, the Seller shall have the option of, at the Seller's expense, of correcting the condition(s) prior to closing and providing a certification from a risk assessor or inspector confirming that the corrective action was taken. Seller shall give Purchaser written notice of such election within five days from receipt of the report and addendum. In the event that the Seller notifies the Purchaser that the Seller declines to exercise that option, then the Purchaser shall have the option to withdraw from this contract upon prompt notice to the Seller and, in such case, the Purchaser shall be entitled to a refund of the Down payment and return of all amounts in paragraph 28 and neither party shall have any further obligations under this Contract.

(b) In the event that Seller exercises the option to cancel this contract, the Purchaser may nevertheless have the option to waive the report and to proceed with the purchase of the premises. Said option by the Purchaser must be exercised in writing within three days after receipt of notice that Seller has declined to take remedial action.

(c) If the Purchaser shall fail to conduct a timely inspection or fail to serve timely notice, the provisions of this paragraph shall be deemed waived and the Purchaser, at its own cost and expense, shall be solely responsible to provide any certificates as may be required by any mortgagee or insurer of the mortgage.

(d) The Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the Premises and has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Premises.

Deed Description: 36. SELLER shall, at CLOSING, include in the Deed of Conveyance such description of the PREMISES as may be required by the lending institution, or the Title Insurance Company insuring the conveyance of title. In the event such description is based upon a new survey, such survey shall also be certified or guaranteed to SELLER and PURCHASER.

Changes Must be in Writing: 37. This Contract may not be changed or canceled, except in writing, and signed by the parties or their respective attorneys.

25-23170-dsj Doc 16 Filed 02/24/26 Entered 02/24/26 11:51:09 Main Document Pg 101 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

| | | |
|---|---|---|
| Contract Binding: | 38. | This Contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and permitted assigns of the respective parties. |
| Singular Also Means Plural: | 39. | Any singular word or term herein shall also be read as in the plural, and viceversa, whenever the sense of this Contract may require it. |
| Conflicts: | 40. | This Contract constitutes the entire Contract between the parties and shall not be modified or altered by any Contracts, warranties, or representations, whether expressed or implied, unless set forth in writing and executed by allof the parties hereto or their respective attorneys. |
| Attorney Authorizations: | 41. | EACH OF THE PARTIES HEREBY AUTHORIZE THEIR ATTORNEYS TO AGREE IN WRITING TO ANY CHANGES IN DATE AND TIME PERIODS PROVIDED FORIN THIS CONTRACT. |

PCDS:

42. Pursuant to the Property Condition Disclosure Act of 2001, and in accordance with the 2023 amendment of Section 462, Subdivision 2, of the Real Property Law: The Property Condition Disclosure Statement [ "PCDS"]:

. a. By signing this contract the Seller hereby affirms that Seller has fully completed and signed the PCDS;

b. By signing this contract the Purchaser hereby affirms that Purchaser has been provided the PCDS which has been fully completed and signed by the Seller.

**The Completion of the PCDS was done without the advice, review and assistance of the Attorneys and such completion by the Sellers and acceptance by the Purchase is outside the scope of the Attorney's representation. Any action commenced to the statement shall not include the parties 'attorneys and the parties indemnify and hold harmless their respective attorneys harmless for any loss, cost or damage resulting from any dispute involving the statement.**

| | | |
|---|---|---|
| Interpretation: | 43. | In any interpretation of the terms of this contract, none of its terms shallbe construed against the seller by reason of the fact that the seller or itsattorneys drafted the contract since the final contract is the result of negotiations by parties having equal bargaining power, with each of theparties having access to legal representation of their own selection. |
| Effective Date: | 44. | This Contract shall not be binding or effective until fully executed by both Parties and delivered by Seller to Purchaser or Purchaser's Attorney. |
| Signatures: | 45. | Digital, DocuSign, electronic, or scanned copies of original handwritten signaturesshall be considered valid. |
| Counterparts: | 46. | This Agreement may be executed in counterparts, each of which shall bedeemed to be an original, but all of which, taken together, shall constitute one and the same agreement. |
| Escrowee: | 47. | Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract bydepositing the Contract Deposit in its designated bank account. |

Page 13

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E188201835

Assignment: 48. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment made without such consent shall be void.

Compliance: 49. If applicable, the Seller shall comply with the Rockland County Well Water Statute, and the Seller shall comply with Executive Law 375(5) pertaining to smoke detectors and carbon monoxide detectors.

CD: 50. The seller(s) and purchaser(s) hereby authorize the delivery of a copy of the Seller's Closing Disclosure (CD), prepared by the lender, to the realestate agents/brokers named herein.

51. Shed. In the event there is an existing shed on the premises, it is specifically understood and agreed that if the shed is found to be in violation of any municipal ordinance from the municipality were the property is located, the Seller shall have the right to remove the violation by removing the shed from the premises and disposing of it without any abatement or reduction in the purchase price, unless the Purchaser and/or lender agree to close title subject to the shed violation with no abatement or reduction in the price.

52. Certificate of Occupancy. Seller's liability to obtain a certificate of occupancy for the building and all improvements shall be limited to $ 2,500.00. In the event the cost shall be in excess of $ 2,500.00 Seller shall have the option to withdraw from the contract, refund the Purchaser's down payment with no further liability. In the alternative Purchaser shall have the option to take the property "AS IS" with no reduction in purchase price.

53. Risk of Loss. Risk of loss or damage to the Property until transfer of title shall be assumed by the Seller. If any substantial damage to the Property occurs prior to transfer, either Purchaser or Seller shall have the option of canceling this Contract without any further liability to the other and the down payment shall be returned to the Purchaser.

54. Sale Subject To: Supplementing Paragraph 6 hereof, the premises to be conveyed hereunder shall also be transferred subject to:
   a. Rights, if any, relating to the construction and maintenance of any public utility wire poles, pipes, conduits, and appurtenances thereto, on, under, or across the premises;
   b. Minor variations and encroachments between record lines and hedges, party walls and fences and the like, not to exceed one (1) foot; shall not be considered exceptions to title, provided the title company will insure against forced removal thereof.
   c. Minor variations between record lines and tax maps, not to exceed one (1) foot.

55. Solar Panels. In the event the home is subject to a lease and/or purchase or solar panels the parties acknowledge that they shall cooperate and execute any and all documents required for the assignment of the solar panel lease and/or the transfer of the solar panels if owned by the seller herein. All costs shall be incurred by purchaser for same. It shall be the obligation of the parties herein to ascertain the costs and responsibilities for said transfer or assignment prior to executing this contract.

56. Seller shall repair the heat in the 2 upstairs Bedrooms and in the bathroom

57. Seller shall remove/take the Pool table and shall complete the renovations in the downstairs bathroom

58. Seller shall pay all solar panel payments current on or before closing

Page 14

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 103 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183D

**Wire Fraud Notice:**

**PROTECT YOURSELF FROM BECOMING A VICTIM OF WIRE FRAUD.** Wire fraud has become very common. It typically involves a criminal hacker sending fraudulent wire transfer instructions in an email to an unsuspecting buyer or seller in a real estate transaction that appears as though it is from a trusted source, such as the victim's broker, attorney or title agent. The email may look exactly like other emails that the victim received in the past from such individuals, including having the same or a similar email address, accurate loan and other financial information, and the logo of one of those individuals. If the hacker is successful, the victim will follow the bogus instructions to wire money, such as deposit money, to the hacker's account. Once this money has been wired, it may not be possible to recover it.

We strongly recommend that, **before** you wire funds to any party, including your own attorney, real estate broker or title agent, you **personally call** them to confirm the account number and other wire instructions. You only should call them at a number that you have obtained on your own e.g., from the sales contract, their website, etc.) and should not use any phone number that is in any email – **even if the email appears to be from someone you know.**

If you have any reason to believe that your money was sent to a hacker, you must immediately contact your bank and your local office of the Federal Bureau of Investigation, who can work with other agencies to try to recover your money, to advise them where and when the money was sent. You also should promptly file a complaint with the Internet Crime Center.

Finally, since much of the information included in such fraudulent emails is obtained from email accounts that are not secure, we strongly recommend that you not provide any sensitive personal or financial information in an email or an attachment to an email. Whenever possible, such information including Social Security numbers, bank account and credit card numbers and wiring instructions, should be sent by more secure means, such as by hand delivery, over the phone, or through secure mail or overnight services.

By signing below, you indicate that you have read and understand the contents of this Contract and Wire Fraud Notice:

| | | |
|---|---|---|
| _DocuSigned by_ | 5/21/2025 | _[signature]_ 5/20/25 |
| Seller  Kemmal France | Date | Purchaser                          Date |
| _DocuSigned by_ | 5/21/2025 | _Chaya Goldstein_ 05/20/25 |
| Seller  Iesha Frazier | Date | Purchaser                          Date |

Page 15

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM

NYSCEF DOC. NO. 2

INDEX NO. 037483/2025

RECEIVED NYSCEF: 10/08/2025

25-23170-dsj Doc 16 Filed 02/24/26 Entered 02/24/26 11:51:09 Main Document Pg 104 of 124

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E188201836

## SCHEDULE "B" PERSONAL PROPERTY RIDER

Personal Property: (a) The sale also includes all fixtures and articles of personal property attached to or used in connection with the PREMISES, unless specifically excluded below. SELLER states that they are paid for and owned by SELLER free and clear of any lien other than the EXISTING MORTGAGE(S). They include but are not limited to:

Air Conditioning Equipment and Installations, Awnings, Bathroom and Kitchen Cabinets, Clothes Dryer, Dishwasher, Door Mirrors, Fencing, Flagpole, Freezer, Garbage Disposal Unit, Heating/Lighting/Cooking fixtures, Mail Box, Mantels, Outdoor Statuary, Oven, Plumbing, Pumps, Range, Refrigerator, Screens, Shades, Shrubbery, Storm Doors, Storm Windows, Switch Plates and Door Hardware, Television Aerials, Tool Shed, Venetian Blinds, Wall to Wall Carpeting, Washing Machine, Weather Vane, Window Boxes, Window Treatments, and built-ins, not excluded below, _and only to the extent that the same exist on the subject premises, and in their present condition, reasonable wear and tear excepted._
As per MLS 840325

Excluded from this sale are furniture and household furnishings.

Prior to the Closing, Seller, at its own expense, shall remove the personal property located at the Premises and not included in the sale contemplated hereby and shall repair all damage to the Premises resulting from the removal of such personal property. Any of Seller's personal property not included in the sale contemplated hereby which is not removed from the Premises shall be deemed abandoned property. Purchaser may cause any such abandoned property to be removed from the Premises. The provisions of this paragraph shall survive the Closing.

(c) Lighting fixtures permitted to be removed by SELLER, shall be replaced by SELLER at SELLER'S expense, with standard "builders" fixtures.

(d) The personal property to be conveyed pursuant to this Contract shall only be to the extent that said personal property presently exists upon the PREMISES, and shall be deemed transferred to and conveyed to PURCHASER under the Deed of Conveyance to be delivered; but it is understood and agreed that no part of the purchase price shall be deemed to have been paid PURCHASER for same and that the property transferred hereunder shall be deemed to have been transferred without consideration.

(e) If, however, it is determined that, notwithstanding the foregoing Paragraph, there is a sales tax due for the transfer of any of the items noted in this Contract, PURCHASER shall hold harmless and indemnify SELLER for any sales tax liability. This Paragraph shall survive CLOSING.

**ATTORNEY FOR SELLER:**
Joy D. Diviny, Esq.
13 N. Main Street
Pearl River, NY 10965
Tel.: (845) 839-9822
Email: joy@jdivlaw.com
maria@jdivlaw.com

**ATTORNEY FOR PURCHASER:**
Jeffrey Yanowitz, Esq.
155 North Main Street
New City, NY 10956
Tel: (845) 639-9100
Email: jyanowitz@loewenberglaw.com

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM INDEX NO. 037483/2025

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 10/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document

Docusign Envelope ID: A068E1F4-3C64-47BD-A1CF-81E18820183B

Pg 105 of 124

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    (ii) _____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    (ii) _____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c) _____ Purchaser has received copies of all information listed above.

(d) _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.

(e) Purchaser has (check (i) or (ii) below):

    (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller Kemnal France | 5/21/2025 Date | Seller Iesha Frazier | 5/21/2025 Date |
| Purchaser Daniel Goldstein | 5/20/25 Date | Purchaser Chaya Goldstein | 05/20/25 Date |
| Agent | Date | Agent | Date |

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
INDEX NO. 037483/2025

NYSCEF DOC. NO. 3

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document

Pg 106 of 124

RECEIVED NYSCEF: 10/08/2025

**EXHIBIT B**

# McGOWAN LAW, PLLC

222 NORTH MAIN STREET
NEW CITY, NEW YORK 10956
TEL: 845.323.4940
FAX: 845.286.3618
McGOWAN.LAW

JOHN W. McGOWAN, ESQ.
DIRECT DIAL: (845) 286-3280
JOHN@MCGOWAN.LAW

August 29, 2025

**VIA CERTIFIED MAIL**
**AND EMAIL:** Kemmalfrance@gmail.com
Kemmal France
33 De Halve Maen Drive
Stony Point, New York 10980

> **Re:**  **DEMAND FOR SPECIFIC PERFORMANCE AND INTENT TO SEEK JUDICIAL RELIEF**
> **33 De Halve Maen Drive, Stony Point, NY 10980**

Dear Mr. France:

I represent Iesha Frazier ("Ms. Frazier") with whom you jointly own the real property located at 33 De Halve Maen Drive, Stony Point, New York (the "Premises").

As you are well aware, on May 21, 2025, you and Ms. Frazier entered into a binding contract (the "Contract") for the sale of the Premises to Chaya M. Goldstein and Daniel Goldstein. My client has complied with her obligations owed under the terms of the Contract and has, at all times, made good faith efforts to effectuate the sale of the Premises.

However, as I understand, you have recently made statements and otherwise engaged in conduct reflecting your refusal or attempted refusal to proceed in accordance with the Contract and sale of the Premises, including your unilateral attempts to renegotiate the existing mortgage terms which, if true, constitutes an improper effort to frustrate this transaction.

Be advised that my client does not consent to any modification of the mortgage or related financing obligations if done in an effort to delay or otherwise compromise the sale of the Premises. You are hereby directed to cease and desist from any further efforts to alter, renegotiate, or interfere with the existing mortgage or otherwise obstruct the Contract or efforts to close this sale.

Should you continue in your efforts or otherwise refuse to cooperate or act in good faith under the terms of the Contact or, in any way, attempt to undermine the sale, then my client is entitled to commence a legal action seeking the following relief:

1. Specific Performance of the Contract, thereby compelling you to perform all obligations owned thereunder and proceed with the sale; and/or

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 108 of 124

Mr. Kemmal France
August 29, 2025
Page 2

2. Partition pursuant to Article 9 of the Real Property Actions and Proceedings Law, to compel a court-ordered sale of the Premises and distribution of proceeds, together with recovery of attorneys' fees and costs.

Further, aside from explicitly reserving the right to commence the aforementioned legal actions, please allow this letter to serve as formal notice that if the sale fails to close due to your actions or inactions, my client will hold you fully responsible for all resulting losses and expenses, including but not limited to:

- Any reduction in ultimate sale price on a future resale;
- Any additional mortgage interest, fees, or penalties incurred;
- Any transactional costs, carrying costs, taxes, or attorneys' fees caused by your breach.

This letter therefore constitutes a formal demand that you:

- Immediately cease all efforts to renegotiate the mortgage or alter the agreed-upon financing arrangements;
- Confirm in writing your intention to perform under the May 21, 2025 contract; and
- Cooperate fully in executing all documents and taking all actions necessary to close the sale.

If written confirmation is not received within ten (10) days of the date of this letter that you agree to cooperate fully in this transaction per your obligations under the Contract (email notification to my attention shall be deemed sufficient), I will proceed to initiate litigation on behalf of my client (in accordance with the above) without further notice to you.

This demand is made in good faith in an effort to resolve the matter without court intervention. However, please be advised that my client is fully prepared to pursue all remedies available to her under law, including recovery of monetary damages and legal fees.

I can be reached at (845) 286-3280 or john@mcgowan.law should there be any questions or concerns. This letter is sent with all rights, both legal and equitable based in statute or otherwise, expressly reserved. Please be guided accordingly.

Very truly yours,
McGOWAN LAW, PLLC

/s/ John W. McGowan
JOHN W. McGOWAN

cc:   Joy Diviny, Esq.
      Attorney for Sellers, Iesha Frazier and Kemmal France
      (via email: joy@jdivlaw.com)

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 10/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 109 of 124

Mr. Kemmal France
August 29, 2025
Page 3

Jeffrey Yanowitz, Esq.
Attorney for Purchasers, Chaya M. Goldstein and Daniel Goldstein
(*via email*: *jyanowitz@loewenberglaw.com*)

Iesha Frazier
(via email: ieshaf79@gmail.com)

FILED: ROCKLAND COUNTY CLERK 10/08/2025 00:22 PM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 10/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 109 of 124

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 8
RECEIVED NYSCEF: 12/08/2025

25-23170-dsj    Doc 16    Filed 02/24/26    Entered 02/24/26 11:51:09    Main Document
Pg 110 of 124

# EXHIBIT 2

FILED: ROCKLAND COUNTY CLERK 12/08/2025 00:53 AM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 12/08/2025
25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 111 of 124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

----------------------------------------------------------------X

IESHA FRAZIER,

                              Plaintiff,

      -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                            Defendants.

----------------------------------------------------------------X

**Index No.: 037483/2025**

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK, COUNTY OF WESTCHESTER:SS.:

    **James Bruen,** being duly sworn deposes and says:

    I am not a party to this action, and am over the age of 18 years and reside in Westchester, New York.

    On October 31, 2025, at 11:25 A.M., at 33 De Halve Maen Drive, Stony Point, NY 10980, I served a true copy of the NOTICE OF ELECTRONIC FILING (dated October 24, 2025) and SUMMONS & COMPLAINT (dated October 24, 2025), in connection with the above-entitled action, in the following manner:

☒ ☐     by delivering a true copy of same to **Kemmal France** personally; deponent knew the person so served to be the individual described in said documents

☐     by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below

☐☐     by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by the attorney for that purpose. In doing so, I received a signal from the equipment of the attorney indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below

☐     by depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below

A description of Kemmal France is as follows: Male, Black Skin, Black Hair, 40-45 Yrs., 5'10" Height, 200-210 Lbs.

                                              _____
                                            James Bruen

Sworn to before me this 3rd day of November, 2025

_____
NOTARY PUBLIC

NOEL F BRUEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BR6057458
Qualified in Putnam County
Commission Expires April 16th, 2027

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,

                        Plaintiff,

        -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

Index No. 037483/2025

**AFFIRMATION OF NON-MILITARY STATUS**

JOHN W. McGOWAN, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1.     I am a member of McGOWAN HARRINGTON PARISI PLLC, attorneys for Plaintiff Iesha Frazier ("Plaintiff") herein, and as such, I am fully familiar with the facts of this case.

2.     In compliance with the Servicemembers Civil Relief Act ("SCRA") (50 U.S.C. § 3901 et seq.), I provided the Department of Defense Manpower Data Center ("DMDC") with the pertinent information about the Defendant, Kemmal France, to determine his active-duty status.

3.     Based on the SCRA Certificate generated by the DMDC, attached hereto, I am convinced that the Defendant is not on active duty in the Military Service of the United States, is not a member of the military reserves, and is not dependent upon a member of the military service or reserves in the State of New York. Furthermore, I have found no evidence that the Defendant is on active military duty with any nation allied with the United States of America.

Dated:  New City, New York
        December 6, 2025

                              */s/ John W. McGowan*
                             **JOHN W. McGOWAN**

# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,

Index No. 037483/2025

                Plaintiff,

**AFFIRMATION OF NON-EXPIRATION OF THE STATUTE OF LIMITATIONS**

      -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

              Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

JOHN W. McGOWAN, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1.     I am a member of McGOWAN HARRINGTON PARISI PLLC, attorneys for Plaintiff Iesha Frazier ("Plaintiff") herein, and as such, I am fully familiar with the facts of this case.

2.     Plaintiff makes this application to the Clerk pursuant to CPLR § 3215 for a default judgment within one (1) year after Defendant's default occurred.

3.     The six (6) year statute of limitations for breach of contractual obligation or liability pursuant to CPLR § 213(2) has not expired.

Dated:  New City, New York
       December 8, 2025

                              */s/ John W. McGowan*
                               **JOHN W. McGOWAN**

Docusign Envelope ID: 3AFBB87E-EB58-407C-9362-440A4518750B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,                                              Index No. 037483/2025

                          Plaintiff,              **AFFIRMATION IN**
                                                  **SUPPORT OF**
          -against-                               **MOTION FOR**
                                                  **DEFAULT JUDGMENT**

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

                          Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

I, IESHA FRAZIER, being a natural person and over the age of 18, affirm this 5th day of December, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

1.    I am the plaintiff in the above-captioned matter and respectfully submit this affirmation in support of my motion for default judgment against Defendant, Kemmal France ("Defendant") and for the relief demanded in the Verified Complaint.

2.    Defendant and I are tenants in common and equal co-owners of the real property located at 33 De Halve Maen Drive, Stony Point, New York (the "Property"), each holding an undivided one-half interest.

3.    On or about May 21, 2025, Defendant and I jointly entered into a fully executed Residential Contract of Sale (the "Contract") to sell the Property to purchasers Chaya and Daniel Goldstein (collectively, the "Purchasers") for the total purchase price of $656,000.

4.    Defendant and I both signed the Contract with the mutual understanding and intent to sell the Property pursuant to its terms.

Docusign Envelope ID: 3EF53FDE-FB58-407C-9862-446A4618750B

5.      After the Contract was signed, I cooperated fully with all efforts necessary to move the transaction toward closing, remained in regular communication with counsel, responded promptly to all requests for information, communicated with the Purchasers' attorney, and prepared to appear on the scheduled closing date of June 20, 2025 (the "Closing Date").

6.      At all times, I have been and remain ready, willing, and able to close pursuant to the Contract.

7.      Following the execution of the Contract, Defendant ceased cooperating with the sale, including failing to respond to communications from me, our attorney, and the Purchasers' attorney, by declining to participate in essential pre-closing requirements, and by failing to appear for the scheduled Closing Date or execute the documents necessary to transfer title.

8.      On or about August 28, 2025, a written demand (the "Demand") was sent to Defendant directing him to comply with his obligations under the Contract and to proceed with the sale.

9.      Since the Demand was sent, Defendant has not responded and has taken no steps whatsoever to complete the closing.

10.     Because of Defendant's refusal to perform the Contract, the sale has not closed, the mortgage on the Property remains unsatisfied, and the Property continues to face active foreclosure proceedings, placing my ownership interest at risk.

11.     I continue to bear the burdens, expenses, and responsibilities associated with the Property while Defendant provides no cooperation or assistance.

12.     I remain fully prepared to complete the sale in accordance with the Contract and desire to move forward so that the Property may be transferred and the outstanding obligations satisfied.



IESHA FRAZIER

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
NYSCEF DOC. NO. 12

INDEX NO. 037483/2025
RECEIVED NYSCEF: 12/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 118 of 124

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,

Index No. 037483/2025

                 Plaintiff,

**AFFIRMATION IN
SUPPORT OF PLAINTIFF'S
MOTION FOR DEFAULT
<u>JUDGMENT</u>**

       -against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,

               Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

I, CHAYA M. GOLDSTEIN, being a natural person and over the age of 18, affirm

this __5__ day of December, 2025, under the penalties of perjury under the laws of New York,

which may include a fine or imprisonment, that the foregoing is true, and I understand that this

document may be filed in an action or proceeding in a court of law.

1. I am one of the purchasers who entered into a Residential Contract of Sale dated

May 21, 2025 (the "Contract") to purchase the real property located at 33 De Halve Maen Drive,

Stony Point, New York (the "Property").

2. Under the Contract, my husband, Daniel Goldstein, and I agreed to purchase the

Property for $656,000, and both Iesha Frazier ("Ms. Frazier") and Kemmal France ("Mr. France")

executed the Contract as sellers.

3. Upon signing the Contract, my husband and I furnished a downpayment for the

purchase of the Property in the sum of $65,600 which has been held in escrow by the sellers'

attorney pending the completion of the sale.

4. Following execution of the Contract, I complied with all requirements necessary to

move the transaction toward closing, including submitting all requested documentation to our

lender and attorney and preparing to appear for the scheduled June 20, 2025 closing (the "Scheduled Closing Date").

5.    At all relevant times, I have been ready, willing, and able to close on the purchase of the Property pursuant to the terms of the Contract.

6.    Upon information and belief, the closing did not occur because Mr. France failed to participate in the closing process and did not appear on the Scheduled Closing Date to execute the documents required to transfer his ownership interest.

7.    Upon information and belief, Mr. France has taken no steps to move the sale forward since the Scheduled Closing Date, despite being notified that his cooperation was required.

8.    I remain fully prepared to complete the purchase should the Court direct specific performance or otherwise order that the transaction proceed.

_____
CHAYA M. GOLDSTEIN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

IESHA FRAZIER,

                Plaintiff,

-against-

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and, DANIEL GOLDSTEIN,

                Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~X

Index No. 037483/2025

**AFFIRMATION IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

I, DANIEL GOLDSTEIN, being a natural person and over the age of 18, affirm this _5_ day of December, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

1.      I am one of the purchasers who entered into a Residential Contract of Sale dated May 21, 2025 (the "Contract") to purchase the real property located at 33 De Halve Maen Drive, Stony Point, New York (the "Property").

2.      Under the Contract, my wife, Chaya M. Goldstein, and I agreed to purchase the Property for $656,000, and both Iesha Frazier ("Ms. Frazier") and Kemmal France ("Mr. France") executed the Contract as sellers.

3.      Upon signing the Contract, my wife and I furnished a downpayment for the purchase of the Property in the sum of $65,600 which has been held in escrow by the sellers' attorney pending the completion of the sale.

4.      Following execution of the Contract, I complied with all requirements necessary to move the transaction toward closing, including submitting all requested documentation to our

FILED: ROCKLAND COUNTY CLERK 12/08/2025 10:42 AM
INDEX NO. 037483/2025
NYSCEF DOC. NO. 13
RECEIVED NYSCEF: 12/08/2025

25-23170-dsj   Doc 16   Filed 02/24/26   Entered 02/24/26 11:51:09   Main Document
Pg 121 of 124

lender and attorney and preparing to appear for the scheduled June 20, 2025 closing (the "Scheduled Closing Date").

5.   At all relevant times, I have been ready, willing, and able to close on the purchase of the Property pursuant to the terms of the Contract.

6.   Upon information and belief, the closing did not occur because Mr. France failed to participate in the closing process and did not appear on the Scheduled Closing Date to execute the documents required to transfer his ownership interest.

7.   Upon information and belief, Mr. France has taken no steps to move the sale forward since the Scheduled Closing Date, despite being notified that his cooperation was required.

8.   I remain fully prepared to complete the purchase should the Court direct specific performance or otherwise order that the transaction proceed.

_____
DANIEL GOLDSTEIN

UCS-840
(rev. 12/16/2024)

# REQUEST FOR JUDICIAL INTERVENTION



Supreme COURT, COUNTY OF Rockland

Index No: _____037483/2025_____ Date Index Issued: ___10/24/2025___

| **For Court Use Only:** |
|---|
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Filed Date |
| |

**CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Iesha Frazier

Plaintiff(s)/Petitioner(s)

-against-

Kemmal France, Chaya M Goldstein, Daniel Goldstein

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:** Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

**MATRIMONIAL**
- ☐ Contested

  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY** Specify how many properties the application includes: _1_
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial

  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*

- ☐ Partition

  *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*

- ☐ Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☒ Other Real Property (specify): Specific Performance

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING** Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: _10/24/2025_ |
| Has a summons and complaint or summons with notice been served? | ☒ | ☐ | If yes, date served: _10/31/2025_ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION** Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice — Date Issue Joined: _____
- ☒ Notice of Motion — Relief Requested: Judgment - Default — Return Date: _01/05/2026_
- ☐ Notice of Petition — Relief Requested: _____ — Return Date: _____
- ☐ Order to Show Cause — Relief Requested: _____ — Return Date: _____
- ☐ Other Ex Parte Application — Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES** — For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Frazier, Iesha<br><br>Role(s): Plaintiff/Petitioner | JOHN MCGOWAN, MCGOWAN HARRINGTON PARISI PLLC, 120 WHITE PLAINS RD STE 420 , TARRYTOWN, NY 10591, john@mcgowan.law | ☐ YES  ☒ NO | |
| ☒ | Name: France, Kemmal<br><br>Role(s): Defendant/Respondent | 33 De Halve Maen Drive, Stony Point, NY 10980 | ☐ YES  ☒ NO | |
| ☒ | Name: Goldstein, Chaya M.<br><br>Role(s): Defendant/Respondent | 20 Truman Avenue, Spring Valley, NY 10977 | ☐ YES  ☒ NO | |
| ☒ | Name: Goldstein, Daniel<br><br>Role(s): Defendant/Respondent | 20 Truman Avenue, Spring Valley, NY 10977 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: 12/08/2025

JOHN W. MCGOWAN
Signature

4915617
Attorney Registration Number

JOHN W. MCGOWAN
Print Name

*This form was generated by NYSCEF*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-------------------------------------------------------------------X

IESHA FRAZIER,
                              Plaintiff,                    Index No.: 037483/2025

        -against-                                          AFFIDAVIT OF SERVICE

KEMMAL FRANCE, CHAYA M. GOLDSTEIN,
and DANIEL GOLDSTEIN,
                              Defendants.
-------------------------------------------------------------------X

STATE OF NEW YORK, COUNTY OF WESTCHESTER :SS.:

**JAMES BRUEN,** being duly sworn deposes and says: I am not a party to this action, and am over the age of 18 years and reside in Ossining, New York.

On December 12, 2025, at 11:40 A.M., at 33 De Halve Maen Drive, Stony Point, NY 10980, I served a true copy of the NOTICE OF MOTION FOR DEFAULT JUDGMENT, AFFIRMATION OF JOHN McGOWAN, EXHIBITS 1-4, AFFIRMATION OF IESHA FRAZIER, AFFIRMATION OF CHAYA M. GOLDSTEIN, AFFIRMATION OF DANIEL GOLDSTEIN, and REQUEST FOR JUDICIAL INTERVENTION, upon **Kemmal France**, a defendant in the within action in the following manner:

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☐ **Corporation:** _____, a defendant, therein named, by delivering a true copy of each to _____ personally; deponent knew said corporation so served to be the corporation described, and knew said individual to be *authorized to* accept thereof.

☒ **Suitable Person:** by delivering thereat, a true copy of each to said defendant's roommate who would not provide her name, a person of suitable age and discretion. Deponent first spoke to defendant Kemmal France through his Ring camera. Kemmal France requested that the aforesaid documents be given to his roommate who accepted service at that time.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof; deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

_____

☒ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known residence, 33 De Halve Maen Drive, Stony Point, NY 10980, and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on December 13, 2025.

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in Federal statutes.

**Descriptions:**
Age (Approx.): 35-40    Perceived Race: Black   Perceived Gender: Female   Weight (Approx.): 140 lbs.
Height (Approx.): 5'5"    Hair: Black Hair    Relationship: Roommate
Other: _____

                                                    _____
                                                           James Bruen

Sworn to before me this 24th day of December, 2025

_____
Notary Public

NOEL F BRUEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BR6057458
Qualified in Putnam County
Commission Expires April 16th. 2027

1 of 1